# IRENE BOYD v. KANSAS CITY, Appellant.

### In Banc, February 9, 1922.

1. **PERSONAL INJURIES: Notice to City: On or About Certain Date.** A notice to the city that the accident in which plaintiff was injured occurred between the hours of eight and nine o'clock p. m. "on or about January 25, 1918," the accident having actually happened on said 25th of January, was a substantial compliance with the statute and was sufficient. [Following Hackenyos v. St. Louis, 203 S. W. 986, and disapproving Reese v. St. Louis, 280 Mo. 123, 216 S. W. 315.]

2. **BRIDGE: Construction: Exercise of Governmental Power.** An iron girder placed in the middle of a street bridge, not called for by the ordinance authorizing the construction of the bridge, was not a part of a governmental plan adopted by the city in the exercise of its governmental powers, although the girder was prescribed by the plans which the ordinance authorized the Board of Public Works to adopt and approve. Under the circumstances, the girder was constructed in the exercise of ministerial powers by ministerial agents, and a city cannot delegate the exercise of governmental powers to a ministerial body.

Boyd v. Kansas City.

3. **STREET: Dangerous Bridge: No Lights: Liability of City.** A city is liable for negligence in the exercise of its ministerial powers in making improvements in its streets, and for negligent failure to maintain the street in a reasonably safe condition for public travel. If a bridge in a highway is constructed according to plans prepared by ministerial officers the city, in the exercise of a discretion conferred upon them by ordinance, in such manner that the bridge or some part of it is dangerous to travelers at night unless lights are maintained thereon, the city fails in its duty to keep the highway reasonably safe for public travel, and is guilty of negligence in opening and maintaining the bridge without sufficient proper lights to enable a traveler timely to see the dangerous construction, namely, an iron girder through the middle thereof; and if a traveler at night, in the exercise or ordinary care, is injured as a result of such dangerous construction, there being no lights sufficient to enable him to see the girder until his automobile is within a very few feet of it, the city must respond in damages.

4. ———: ———: **No Automobile Lights.** The city cannot shift or delegate its duty to keep a street in a reasonably safe condition for public travel, and cannot escape liability for maintaining a dangerous bridge by reliance upon the observance of an ordinance or statute requiring automobiles to carry headlights sufficient to reveal objects one hundred and fifty feet ahead of them. Such ordinance or statutory requirements are intended to impose a duty upon the owners and drivers of automobiles, and not upon their passengers or guests.

5. ———: ———: **Contributory Negligence: Excessive Speed.** Where the ordinance declared a speed of an automobile in excess of twenty miles an hour should be evidence of negligence, and plaintiff's evidence tends to show a speed not to exceed fifteen miles an hour, the court cannot rule that plaintiff was guilty of contributory negligence as a matter of law. Besides, in this case the ordinance, while it declared a speed in excess of twenty miles an hour should be evidence of negligence, did not make such speed negligence *per se*, but only presumptive evidence of negligence for the benefit of the jury.

6. ———: ———: ———: **Keeping to Right of Center of Street.** An ordinance requiring the drivers of automobiles to keep to the right of the middle of the street applies only when they are passing other vehicles. At other times, they have a right to use the entire roadway, including the middle or the left side thereof.

7. ———: ———: ———: **Guest or Passenger.** The guest of the owner or driver of an automobile is not chargeable with the driver's negligence, either in driving at an excessive speed or in the middle of the street.

8. ———: ———: Constructed by Railway Company: Injury to Automobile Traveler: Demurrer. Where the bridge in the public street had been constructed by a railway company, in accordance with plans framed and adopted by the city's Board of Public Works, which had been authorized by ordinance to frame and adopt such plans, and an iron girder had been constructed through the middle of the bridge, so that in approaching the bridge only the end of the girder was visible, and an automobile, in which plaintiff was a guest, ran against said girder in the night time, and suit is brought against both the city and the railway company, the sustaining of a demurrer to the evidence of the railway company is no sufficient reason for sustaining one offered by the city, since the city is liable on the ground that, without having supplied the bridge with sufficient lights, it invited the public to use it for travel, whereas the railway company did not open the bridge for travel and had no connection with it after it was constructed and turned over to and accepted by the city.

9. INSTRUCTION: To Find for Defendant: Omission of Material Circumstances. An instruction to find for defendant which does not embrace all the circumstances should not be given. Where the bridge in the street was not properly lighted, and the automobile in which plaintiff was a guest ran against an iron girder in the middle of the bridge, an instruction which tells the jury that, if the sky was clear and there was no smoke or fog about the viaduct, their verdict must be for the defendant city, should be refused, since it assumes that, if the sky was clear and there was no fog or smoke, there would have been sufficient light from the moon and other lights to have enabled the driver to see the girder and avoid striking it.

10. ———: Read as a Whole: Maintaining a Dangerous Bridge. An instruction undertaking to cover plaintiff's case must be read as a whole; and when the instruction in this case is so read, it will be found that it does not predicate plaintiff's right to a verdict upon the construction of a bridge with a girder in the middle thereof, but upon the negligent maintenance of said girder.

11. BRIDGE: Public Nuisance. Where the franchise ordinance contemplated that there should be but one roadway on the bridge and that it should extend from sidewalk to sidewalk, and the court has held, in a suit for personal injuries to a traveler, that the maintenance of an iron girder in the middle of the bridge without being properly lighted was negligence, it is not necessary to decide whether said iron girder was an illegal structure and a nuisance per se.

12. EXCESSIVE VERDICT: $7,500: Broken Leg. Where plaintiff's right leg was broken above the knee, the leg is permanently drawn

Boyd v. Kansas City.

and shortened two inches, her knee and toes are turned from their natural position, she has a decided limp and she was confined to the hospital and at her home for weeks and later walked on crutches for some time, and the verdict was for $9,000, which the trial court reduced to $7,500, the Supreme Court will not require a further reduction as a condition of affirmance.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson*, Judge.

AFFIRMED.

*E. M. Harber* and *Francis M. Haywood* for appellant.

(1) The court erred in refusing the instruction in the nature of a demurrer to the evidence asked by defendant, Kansas City, at the conclusion of plaintiff's evidence, because plaintiff did not give the statutory notice as to the time of the accident required by the statute. Laws 1913, p. 545; Reid v. Kansas City, 195 Mo. App. 457; Hackenyos v. St. Louis, 203 S. W. 986; Reese v. St. Louis, 216 S. W. 315. (2) The court erred in overruling the peremptory instruction in the nature of a demurrer to the evidence asked by the defendant, Kansas City, at the conclusion of all the evidence in the case, because, in addition to the foregoing ground: (a) The viaduct in question did not constitute either a nuisance or an obstruction to travel. Atchison v. St. Joseph, 133 Mo. App. 563; Seibert v. Railroad, 188 Mo. 657; Wolff v. Dist. of Columbia, 196 U. S. 152; Giles v. Ternes, 93 Kan. 491; Kaiser v. St. Louis, 185 Mo. 374; Solomon v. Duncan, 194 Mo. App. 517; Am. Brew. Assn. v. Talbott, 141 Mo. l. c. 683; Gaines v. New York, 215 N. Y. 533, 109 N. E. 594. (b) Because the evidence showed that the automobile in which plaintiff was riding was going at a rate of speed in excess of that permitted by ordinance, and in the middle of the street which was also forbidden by ordinance which plaintiff knew but permitted without protest. Williams v. St. Joseph, 166 Mo.

App. 299; Marsh v. Ry. Co., 104 Mo. App. 577; Leapard v. K. C. Rys. Co.; 214 S. W. 268. (3) The court erred in giving the peremptory instruction asked by defendant. Terminal Railway Company at the conclusion of all the evidence in the case without giving that asked but defendant Kansas City, for the same reason that a principal cannot be held because of the act of an agent where the agent is held blameless. McGinnis v. Ry. Co., 200 Mo. 347; Delaplain v. Kansas City, 109 Mo. App. 113; Clifford v. Dam, 81 N. Y. 52. (4) The court erred in refusing an instruction asked by defendant Kansas City. Atchison v. St. Joseph, 133 Mo. App. 563; Seibert v. Railroad, 188 Mo. 657. (5) The court erred in refusing to admit proper evidence offered by defendant city. Offoty v. Miss. Trust Co., 196 S. W. 428; Hilburn v. Ins. Co., 140 Mo. App. 355; Dudley v. Wabash, 167 Mo. App. 647; Hopkins v. Modern Woodmen, 94 Mo. App. 402. (6) The court erred in admitting improper evidence offered by plaintiff over the objections and exceptions of defendant city. Reese v. St. Louis, 216 S. W. 315. (7) The court erred in giving instruction "A" asked by plaintiff over the objections and exceptions of Kansas City. Winslow v. Ry. Co., 192 S. W. 121; State ex rel. Long v. Ellison, 272 Mo. 571; Pyburn v. Kansas City, 166 Mo. App. 150. (8) The court erred in permitting an excessive verdict for plaintiff to stand. Stolze v. Transit Co., 188 Mo. 581.

*New, Miller, Camack & Winger, P. E. Reeder, Frank P. Barker* and *R. D. Groves* for respondent.

(1) The notice served on the mayor on March 4, 1918, was sufficient, because the language in said notice, taken as a whole, constitutes a substantial compliance with the statute. Laws 1913, p. 545; Hunt v. St. Louis, 211 S. W. 673; Morrill v. Kansas City, 179 S. W. 762; Reid v. Kansas City, 192 S. W. 1049; City of East Chicago v. Gilbert, 59 Ind. App. 613; Heffner v. Heffner, 48 La. Ann. 1088; Brenner v. Chicago, 182 Ill. App. 348.

(2)  The institution of the suit itself by filing original petition on the 8th day of March, 1918, summons having been served on the mayor on March 12, 1918, all within ninety days of the occurence of the accident in question, was a sufficient and substantial compliance with the statute.  Hunt v. St. Louis, 211 S. W. 673; Morrill v. Kansas City, 179 S. W. 759; Laws 1915, p. 220; Smith v. Mosley, 234 Mo. 486; Capitain v. Trust Co., 117 S. W. 628.   (3) Since the suit was brought within ninety days from the occurrence of the accident complained of, no notice was necessary because the statute was not intended to apply to suits brought within the time required for notice. Morrill v. Kansas City, 179 S. W. 759.   (4)  Respondent was not obliged to serve any notice under the statute in this case because the condition of the bridge in question at the time of the injury was nuisance maintained by the city as distinguished from a defect.  28 Cyc. 450; Hughes v. City of Fond du Lac, 73 Wis. 380; Elrod v. Town of Franklin, 204 S. W. 298; McCarty v. Mountain View, 188 S. W. 595; Updike v. Omaha, 30 L. R. A. (N. S.) 589. (5)  The court rightfully refused to sustain appellant's demurrer to the evidence because there is ample testimony in the record showing that at the time of the injury the girder in the middle of said bridge or viaduct was a dangerous obstruction therein and a nuisance, and because there is also ample evidence in the record showing that respondent was not guilty of contributory negligence.  (a)  The girder in the center of the viaduct was a dangerous obstruction and a nuisance.   K. C. Ordinance 9701, sec. 2 (a); Ordinance 2336, sec. 6, par. (d); Benton v. St. Louis, 217 Mo. 687; Birkhimer v. Sedalia, 200 S. W. 298; Burns v. St. Joseph, 91 Mo. App. 489; Loewer v. Sedalia, 77 Mo. 431; Davenport v. Hannibal, 108 Mo. 471; Gallagher v. Tipton, 133 Mo. App. 557; Ordinance 28759, sec. 25; Columbia Taxicab Co. v. Strop, 215 S. W. 748; Corcoran v. New York, 188 N. Y. 131; DeCourey v. Const. Co., 140 Mo. App. 169.   (b) The automobile was being driven in the proper part of the street and was not exceeding the speed limit.  Ordi-

nance 28759, sec. 9; Berry on Automobiles, par. 173; Loewer v. Sedalia, 77 Mo. 446; Montague v. Ry. Co., 193 S. W. 935; Statter v. Railroad, 200 Mo. 107; Munger v. Sedalia, 66 Mo. App. 629; Baxter v. Transit Co., 103 Mo. App. 597; Becke v. Mo. Pac. Ry. Co., 102 Mo. 544; Ferry v. City of Waukegon, 205 Ill. App. 109; Rappaport v. Roberts, 203 S. W. 676; Lawler v. Montgomery, 217 S. W. 856. (6) Appellant's point 3 is not tenable, because of action to be against the railway company as the servant or agent of the city, and that the defendant city was not an active participant or wrongdoer in the negligence complained of. McGinnis v. Ry. Co., 200 Mo. 347; Burnes v. St. Joseph, 91 Mo. App. 489. (7) The action of the court in refusing the city's instruction complained of in appellant's point 4 was eminently proper, and appellant was not prejudiced by such action of the court. Hunt v. St. Louis, 211 S. W. 673. (8) The court did not commit error in sustaining the objection to the question asked witness Williams, and the defendant was not prejudiced thereby, because: (a) The witness was not qualified to testify as to the rate of speed of an automobile. Priebe v. Crandall, 187 S. W. 605. (b) The witness's answer went to the jury and the testimony was merely cumulative. Smoot v. Dennison, 196 S. W. 1018. (9) Instruction "A" complained of by the appellant correctly stated the law applicable to the case and covered all the necessary facts for the jury to find and the trial court committed no error in giving it. Benton v. St. Louis, 217 Mo. 687; Birkhimer v. Sedalia, 200 S. W. 298; Burnes v. St. Joseph, 91 Mo. App. 489; Loewer v. Sedalia, 77 Mo. 431; Davenport v. Hannibal, 108 Mo. 471; Gallagher v. Tipton, 133 Mo. App. 557; Kain v. Railway, 29 Mo. App. 53; Hartpence v. Rogers, 143 Mo. 633. (10) It is not within the province of the trial court to set aside the verdict unless it is so obviously disproportionate to the injuries received as to show the jury were actuated by passion and prejudice. 16 Am. & Eng. Ann. Cases, 9; Gratiot v. Mo. Pac. Ry. Co., 116 Mo. 450; Phillips v. Railroad Co., 170 Mo. App. 416; Parker v. Met. St. Ry.

Co., 140 Mo. App. 703; Partello v. Mo. Pac. Ry. Co., 217 Mo. 645; Waechter v. Ry. Co., 113 Mo. App. 270. (11) The evidence shows the verdict was not excessive and in view of the testimony the verdict of the jury must stand. Bamber v. Rys. Co., 192 S. W. 953; Parker v. St. Ry. Co., 140 Mo. App. 703; Chapman v. Rys. Co., 217 S. W. 623, Ann. Cases, 1913 A, 1363; Duffy v. Rys. Co., 217 S. W. 883.

SMALL, C.—This is a suit for personal injuries. The plaintiff had judgment against Kansas City, and the majority of the learned Judges of the Kansas City Court of Appeals, to which the appeal was taken by the city, reversed, without remanding the case, on the ground that plaintiff had not given the city notice of the time and place of the ·accident as required by the statute in such cases, in that, said notice stated the time of the accident was between the hours of eight p. m. and nine p. m. *"on or about* January 25, 1918," whereas it should have stated the date unqualifiedly and with absolute certainty as being *"on* January 25, 1918," which was the date the injury occurred. One of the learned judges of said court, however, the Honorable Ewing C. Bland, dissented from the opinion of said court on the ground that it was in conflict with the decision of this court, Division No. 2, in the case of Costello v. Kansas City, 219 S. W. 386, and requested that the case be certified to this court, which was done.

The petition was against the city of Kansas City and the Kansas City Terminal Railway Company, but a demurrer to the evidence was sustained in favor of said Terminal Company, and the trial proceeded against the city, with the result there was a verdict and judgment against it alone.

The petition alleged after the formal allegations of the corporate character of the defendants, that defendant railway company, some time prior to January 25, 1918, had built a bridge or viaduct on Harrison Street, over the Belt Line tracks at a point about half-way between

19th and 21st Streets in Kansas City, Missouri, and said bridge became thereby a part of the roadway of said Harrison Street. That in building said bridge, said railway company negligently constructed a large iron girder in the center thereof, running lengthwise north and south, upon a concrete base four feet wide and six inches high, said girder itself being twenty inches wide and thirty-two inches high at its ends, and rising gradually several feet higher towards the center. That in approaching said bridge from either direction, only the ends of said girder would be visible; that it was painted black, and this being the color of the roadway, was invisible at night, and was so constructed as to be dangerous to drivers of vehicles and automobiles; and it was on January 25, 1918, and for a long time prior thereto, a nuisance; that said city knew of its dangerous condition or could have known thereof by the exercise of reasonable care, long prior to said 25th day of January, 1918, but continued to negligently maintain said obstruction and dangerous street and said nuisance, and negligently failed to place any warning lights on or near said obstruction or said bridge, or provide any other means to warn drivers of vehicles of said obstruction in and dangerous condition of said street. That by reason of all the foregoing, said bridge, especially during the night time, was dangerous to public travel and was a nuisance. That on or about the 25th day of January, 1918, between eight o'clock and nine o'clock p. m., plaintiff was a passenger or occupant of an automobile being driven north on said Harrison Street from a point south of said bridge; the street and bridge were dark, and the automobile ran into said iron girder located in the center of said bridge in said Harrison Street; that owing to said street and bridge being improperly lighted, and that said girder was negligently placed in the center thereof by the defendant railway company, and negligently permitted to remain there by said city, the driver of said automobile did not discover said obstruction in time to prevent the automobile from colliding with said obstruction, and said automobile did run head-on directly

into the end of said iron girder at said time and place. That plaintiff had no warning of said obstruction and did not see it prior to the accident and the said driver did not know of its existence prior to said accident; that said automobile was being driven at a lawful speed; that plaintiff was injured by said collision as follows: Her right leg, just below the hip, was broken, both legs bruised and sprained; her back sprained, and her entire body bruised, and she received a severe nervous shock to her entire system and suffered and will continue to suffer great physical pain and mental anguish as a result thereof, for which she prays judgment for $25,000.

Plaintiff further says that she gave notice in writing, verified by her affidavit, to Honorable George H. Edwards, mayor of said city, on the 18th day of February, 1918, stating the place where, and the time when said injuries, hereinbefore set forth, were received and the character and circumstances of such injuries, and that she would claim damages therefor from the defendant, Kansas City, Missouri.

Wherefore plaintiff prays judgment against defendants for $25,000 and costs.

The answer of defendant city denied the allegations of the petition, except that said bridge was constructed by said Terminal Railway Company, and alleged that said bridge was constructed by said company by virtue of Ordinance Nos. 2336 and 9701, of Kansas City, Missouri, approved, respectively, July 7, 1909, and August 11, 1911, in accordance with plans and specifications on file in the office of the Board of Public Works of said city, and duly approved by said board long prior to plaintiff's alleged injuries; that said viaduct was planned, adopted and constructed by virtue of the governmental power of said city.

Further, that plaintiff herself was guilty of contributory negligence: 1, In permitting the driver of said automobile, without protest, to drive such machine at a high and dangerous rate of speed; 2, in permitting, without protest and with full knowledge thereof, the said

driver to drive such machine at an excessive rate of speed to-wit, in excess of twenty miles an hour, in violation of Section 20 of Ordinance No. 28759 of said city; 3, in permitting said driver to drive said machine in a negligent manner in the center of the street instead of to the right of such center, in violation of Ordinance No. 28759 of said city.

The reply denied that said viaduct was constructed by said railway company under and by virtue of said Ordinances 2336 and 9701, as stated in the answer, or either or any of them, and specifically denied that said viaduct was constructed as planned, adopted or constructed under and by virtue of the governmental powers of said city, but alleges that said viaduct was constructed in direct violation of said ordinances in this: That it was not provided in said ordinances that a girder or any other obstruction should be placed in the middle of said viaduct, but did provide that all space thereon, between sidewalks, should be constructed as a roadway, free of obstructions; but that said girder was placed in the center of said roadway on said viaduct in direct violation of said ordinances, so as to make said road dangerous to public travel as alleged in the petition.

At the trial, Ordinance No. 1197, referred to in the pleadings, was put in evidence, and Section 2 provided for the construction, by said Terminal Railway Company, of said Harrison Street viaduct and that "the manner of construction of the viaducts shall be as provided in paragraph (d) of Section 6 of said Ordinance No. 2336." "And the plans and specifications of all viaducts, subways and their approaches, whether required by this ordinance or Ordinance No. 2336, shall be subject to the approval of the Board of Public Works."

Paragraph (d) of Section 6 of said Ordinance No. 2336 was as follows: "(d) The Kansas City Terminal Railway agrees that it will, at its own expense, and within the time limited in Section 10 hereof, construct a viaduct over its tracks as said tracks now exist or as they may be hereafter constructed, added to, rearranged or re-con-

structed, with necessary approaches, at the intersection of its existing lines (acquired from the Kansas City Belt Railway Company) with each Pennsylvania Avenue and Broadway, in accordance with such plans and specifications as shall be approved by the Board of Public Works and by the Board of Park Commissioners, respectively. The substructure of said viaducts shall be stone, concrete, or concrete and steel. The superstructure shall be steel or steel and concrete with the roadways and sidewalks carried on brick or concrete arches or on concrete slabs reinforced with steel bars. The approaches to said viaducts shall be steel, stone, concrete, or steel and concrete filled with earth where retaining walls are used. . . . The surface of said viaducts and approaches shall conform to the grade hereinafter by this ordinance fixed and determined. Said viaducts and approaches thereto shall be provided with sidewalks for foot passengers, which shall be uniform in width with the sidewalks on the connecting street, unless otherwise ordered by the board having supervision thereof, on both sides of each viaduct and approaches, except as hereinafter stated, and the remainder shall be roadway. The roadways and sidewalks shall be constructed of the best available material, and of such material as shall be first approved by the board having supervision thereof. Said viaduct and approaches shall, when constructed, be of sufficient strength to permit street-car traffic. The construction of said viaduct and approaches thereto above seven feet in height in the clear shall be such as shall be termed an 'open viaduct,' so that it will, as far as possible, allow the use of the streets under the approaches by the public for general traffic purposes. Said viaducts and approaches shall be of the full width of the street as now established.''

The evidence showed that the plans and specifications for building said bridge provided for the construction of said iron girder in the center thereof, as same was constructed, and that such plans and specifications were approved by the Board of Public Works of said city.

There was evidence by expert engineers for the city that it was not practicable or feasible to construct the bridge in question strong enough to bear the traffic which it would have to carry without the construction of said girder in the center. On the part of the plaintiff, an expert engineer testified to the contrary and that the two side girders could have been made strong enough to carry the traffic without any center girder at all. The roadway between the sidewalk and girder on each side was sixteen feet, and without the girder would have been thirty-two feet and twenty inches.

Ordinance No. 28759 of the city was introduced by both parties. Among other things it provided, in Section 26, that driving a motor vehicle "for a distance of more than 200 feet" at the place in question "in excess of twenty miles an hour," should be "presumptive evidence of driving at a rate of speed which is not careful and prudent." And that: "Section 9. Vehicles: How to be Driven. Vehicles shall be driven in a careful manner and with due regard for the safety and convenience of pedestrians and all other vehicles. Every person using any vehicle on any street in the city of Kansas City, shall operate, drive or ride such vehicle on the portion to the right of the center of the street, except where the right side of the street is in such condition as to be impassable." Also in Section 25: "Motor vehicle headlights shall not exceed thirty-six candle-power each, and single street-car or motorcycle headlights shall not exceed seventy-five candle-power, and shall produce sufficient light to reveal objects one hundred and fifty feet ahead and shall be adjusted and directed to that on level ground, the main shaft of clear condensed light shall be projected straight forward and that no portion of it shall be above the level of the lamp nor more than forty-two inches above the ground. . . . Such adjustment and direction shall be permanently maintained. Electric headlights shall in addition have the entire surface of their door glass etched or ground to such degree that the lighted filament shall appear blurred and indistinctly defined and that all light

emitted shall be diffused and free from scintillation or metallic luster.''

The evidence further tended to show that the viaduct with the girder therein, as charged by the plaintiff, was completed and accepted by the city and opened for travel as part of Harrison Street, in 1914, and was continuously used by the public from that time until the date of the accident. That said viaduct crosses the Belt Line tracks of the defendant Terminal Company, and is built in a valley. The plaintiff's evidence tended to show that when the accident happened, January 25, 1918, the night was dark and the atmosphere misty, foggy and cloudy at the point where the accident occurred, and if there was any ''moon'' it was obscured thereby; also that there were no lights near enough to give light enough to enable the driver of the automobile to see the girder in the bridge in time to avoid colliding with it, said girder being painted black and the roadway itself being also of black material.

The defendant's evidence tended to show that there was an electric light at 21st Street, 374 feet south of the point of collision, and another at 19th Street, a somewhat longer distance north of the point of collision; that it was a clear moonlight night, no fog or clouds where the accident happened; that the girder and bridge could be seen from about 21st Street; that according to the U. S. Weather Bureau, there was a nearly full moon which was four hours high, at the time of the accident. It, however, appeared that the observations were taken at an elevated point in the city, where it was often clear, when the atmosphere was clouded by fog, mists and smoke along the valley where the Belt Line runs and where the accident occurred. The driver testified that the electric light at 19th Street shown on his windshield so that he could not see the bridge or girder as he approached. So that the evidence as to the extent and effect of the darkness or light at the time and place of the accident, was conflicting.

The plaintiff's evidence further tended to show that on the evening of the accident, the 25th day of January,

1918, the plaintiff, Irene Boyd, arranged with her sisters, Mrs. Knott and Mrs. Waymer, to go to a dance to be given by the Yeomans Lodge. A Mr. Meiyer was to accompany them. G. L. Kendrick, at the request of Meiyer, was to take Meiyer and the three women in his five-passenger car to the dance, which was to be held at a building north of the Belt Line tracks, near 15th Street and Troost Avenue. They all got in the car, at a point south of said bridge, to go to the dance, so they were required to travel north. Kendrick sat at the left side of the front seat and drove the car. The plaintiff sat at his right on the same seat. Meiyer and Mrs. Knott and Mrs. Waymer sat in the back seat, Meiyer sitting in the middle. A man named Devereaux, the room-mate of Kendrick, who was going to another place, not to the dance, sat on the right rear door with his feet inside. There was slush and water which had begun to freeze on the sides of the roadway near the curbs, so they drove about fifteen miles an hour, to the right of or in the center of the street, to avoid the slush and freezing water. The glass in the headlight was ground, and the headlight on the machine was tipped down so that the lamps did not shine above the top edge thereof, as required by the city ordinance, and there was some depression in Harrison Street, just before reaching the bridge, and Kendrick, the driver, did not see the girder until within four or five feet, although his headlight projected the light forty or fifty feet ahead of him. As soon as he saw the girder, Kendrick immediately applied his brake and threw out the clutch, but it was too late to stop and the machine went into the end of the girder, wrecking it and throwing the occupants out onto the ground. None of the occupants knew the girder was there and none saw it, prior to the collision. Plaintiff in particular testified that she had no knowledge of the existence of the girder, thought it was all open street; that there was nothing to indicate Kendrick was not driving in the proper manner; that they were not engaged in conversation, but Kendrick was simply looking ahead and driving the car, and was not, at any time, driving over

fifteen miles an hour; his lights were burning; that she did not see the girder before they hit it; that she sometimes looked ahead and sometimes looked down towards the floor of the machine as they drove along. A number of witnesses for plaintiff testified that the car was not going over fifteen miles per hour, whereas a number for defendant testified that it was going forty to fifty miles per hour.

As to Plaintiff's Injuries: Plaintiff's evidence tended to show that she was thrown out and rendered unconscious by the collision. She was removed to the City Hospital, where she remained one week. Her right leg was broken and crushed two inches above her knee, and both legs bruised and sprained; from the City Hospital she was taken to the Eastside Hospital, where she continued in bed for three weeks more, and then sat up and afterwards walked on crutches for about three weeks. When her wounds healed up so that she could walk, she was compelled to walk on the right side of her foot; her right leg is drawn up so that it is two inches shorter than it was before the injury. Her knee is turned, and her toes turned outward. In going up stairs she is compelled to go up with her left foot first and drag her right foot behind. She walks with a decided limp. Her present condition is permanant. The evidence of the city did not materially contradict the evidence of the plaintiff as to her injuries.

The notice of the accident and intention to sue is quite full, and is not attacked by appellant city except as to its recital or statement of the time the accident occurred, which was as follows: "That the time when the injuries occurred was between eight and nine o'clock p. m. on or about the 25th day of January, 1918." It was duly served upon the mayor on March 4, 1918. The petition was filed March 8th, and summons issued against the city March 9th, and executed on the 12th of March, 1918 by delivering copy of summons and petition to the mayor of the city.

The defendant city offered a demurrer to the evidence at the close of all the evidence in the case, which

the court refused.  The court also gave certain instructions for the plaintiff, and refused certain instructions for the defendant city, of which appellant complains. These instructions will be set out in the opinion.  There was a verdict for $9,000 in favor of the plaintiff, which was reduced by the court to $7,500, and judgment rendered for that amount against the city, from which the city appealed to the Kansas City Court of Appeals, which certified the case to this court, as hereinbefore stated.

I.  The majority of the judges of the learned Court of Appeals held that the notice of the accident and intention to sue the city was insufficient to comply with the statutory requirement, because, although the undisputed evidence was that the accident occurred between eight and nine o'clock p. m. on January 25, 1918, the notice stated that it happened *"on or about"* January 25, 1918, between said hours. The court based its decision on Hackenyos v. St. Louis, 203 S. W. 986, and Reese v. St. Louis, 280 Mo. 123, 216 S. W. 315, decided by this court.  It is true that in said last-mentioned case, the court, Division 2, did so hold, and cited said Hackenyos Case, decided by Court in Banc, as an authority on all-fours with the Reese Case.

*Notice: Sufficiency.*

A careful reading, however, of the Hackenyos Case shows a wide difference between the two cases.  In that case the notice stated that the injury occurred "on or about the 1st day of September, 1913, about 11 a. m," whereas the injury occurred on the 2nd day of September, 1913.  The majority of Court in Banc adopted the opinion written by RAILEY, C., in Division 2, holding that a variance of one day between the time stated in the notice and the true date of the accident, was fatal.  But a dissenting opinion was filed by WOODSON, J., concurred in by BOND and WALKER, JJ., holding that a substantial compliance with statute was all that was required and that a variance of no more than one day was a substantial compliance with the law.  It is unnecessary to attempt to review the many decisions on this question, in view of the very

elaborate quotation and citation of the authorities contained both in the opinion of the court in the Hackenyos Case and the dissenting opinion therein. Those curious to see the holdings of the various courts are referred to said opinions. It is sufficient to say that as we read the Hackenyos Case the court did not decide and had no intention of deciding that if the accident happened on a given day, the notice would be invalid if it stated that it occurred *on or about* said date, giving the date correctly. Indeed, the argument of the learned commissioner adopted by the court would seem to be that in such cases the notice would be sufficient. On page 988 (203 S. W. Rep.) the learned commissioner said: "In Murphy v. Seneca Falls, 57 App. Div. 438, 67 N. Y. Supp. 1013, the accident occurred on April 10, 1897, while the notice said it occurred on or about April 10, 1897. This was held to be a substantial compliance with the law. In Connor v. Salt Lake City, 28 Utah, 248, 78 Pac. 479, the notice alleged that the *injury* was 'sustained on or about January 15, 1902,' while the evidence showed it took place on the night of *that day.* It was held that the notice was sufficiently definite as to time. Neither the Murphy Case nor that of Connor v. Salt Lake City, supra, sustain the plaintiff's contention. If they had said 'on or before' some day which was not correct, they would have been out of line with the array of authorities heretofore cited. They, however, made no such announcement."

The opinion in the Reese Case, supra, Division 2, misconceived the ruling of Court in Banc in the Hackenyos Case, because, in the Reese Case, while the notice stated the accident occurred "on or about the 27th day of March, 1914," the evidence showed it did happen on said day, and not the day after the day named in the notice, as in the Hackenyos Case. Therefore, it would seem it cannot be logically said that the Hackenyos Case is "on all fours" with the Reese Case, or is an authority sustaining it. In the case mentioned by the learned dissenting judge of the Court of Appeals, Costello v. Kansas City, 219 S. W. 386, it was held no notice at all need be given

the city prior to suit brought where the suit is filed and defendant answers within ninety days from the date of the accident, following Hunt v. St. Louis, 211 S. W. 673, and other cases cited. In such cases the allegations in the petition take the place of the notice required by statute. In the Costello Case the abstract of the record shows the petition stated that plaintiff was injured "on or about the 21st day of April, 1917, and about the hour of 8:30 p. m. of said day." But the opinion does not show whether any point was made with respect to the statement of time in the petition, or whether the sole point made was that no notice at all was given before suit brought. So that case cannot be regarded as an authority applicable to this case. But we are nevertheless compelled to decide the case, because we acquired jurisdiction by the certification thereof to this court, by the Kansas City Court of Appeals, without reference to whether its decision was in conflict with the case mentioned by the learned dissenting member of that court.

We are therefore at the outset confronted with the question as to the proper construction to be given the statute requiring notice of suit to such cities. The statute so far as it relates to the specification of time the accident happened, the only question before us is as follows: "No action shall be maintained against any city of this State    .   .   .    until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence  .  .  .  stating  .  .  .  the time when such injury was received." [Laws 1913, p. 545.]

In the case we have to decide, both the petition and the notice were delivered to the mayor within ninety days of the occurrence. It is urged that there are allegations in the petition which are more definite and tend to show that the accident occurred, not on or about, but on said 25th day of January, 1918. But, however that might be, we are satisfied that inasmuch as the plaintiff received her injuries on the 25th day of January, 1918, the notice served upon the mayor in this case stating that she re-

ceived such injuries "*on or about* the 25th day of January, 1918," is a substantial compliance with the statute and meets the intention and purpose of the Legislature. The purpose of the law was not to lay a trap for honest claimants for personal injuries against cities, but to notify such cities of the time the injury happened, within ninety days after it did happen, so that the city would have a reasonable opportunity to ascertain the facts before they were lost or obscured by the lapse of time. We hold, therefore, that the notice served upon the mayor, in this case, in all material matters and for all substantial purposes intended by the law, complied with the statute and was sufficient, and that our decision is in harmony with the decision of this Court in Banc in the Hackenyos Case, supra, and that the Reese Case is not supported by said case of Hackenyos, nor by the principles of construction which should be followed in interpreting said statute. We rule this point, therefore, against appellant.


II.   As to the demurrer to the evidence.

We cannot agree with appellant's learned counsel that the girder complained of was a part of a governmental plan for the bridge adopted by the city in the exercise of its governmental powers, and therefore the city could not be liable for its location in the center of the bridge, even if it did render the street dangerous and not reasonably safe for travel at night without lights. The city could not delegate the exercise of governmental powers to a ministerial body like the Board of Public Works. [Ruggles v. Collier, 43 Mo. 353; St. Louis v. Clemens, 43 Mo. 395; Bigelow v. Springfield, 162 S. W. (Mo. App.) 754; California v. Kiesling, 180 S. W. (Mo. App.) 560.] It is not claimed that the franchise ordinance in this case prescribed that said bridge should have such center girder, but it is claimed that said girder was prescribed by the plans which the ordinance authorized the Board of Public Works to subsequently adopt and approve. This is true,

*Exercise of Governmental Power.*

but the plans which the said board were authorized to adopt were not therefore governmental, because the city could not delegate its governmental powers. Had the plans already been prepared and properly identified in, and adopted by the franchise ordinance, then they would have been part of the ordinance itself, as if fully set out therein. [Dickey v. Holmes, 109 Mo. App. 721; McCormick v. Moore, 134 Mo. App. 669.] But this was not the case here. We hold, therefore, that said girder was put in said bridge by the city in the exercise of its ministerial powers, through the ministerial agents of the city.

III. That the city is liable for negligence in the exercise of its ministerial powers in making improvements in its streets, and for negligent failure to maintain them after they are made in such manner as to render the street in a reasonably safe condition for public travel, is well settled. [Ely v. St. Louis, 181 Mo. l. c. 729-30; Birkhimer v. Sedalia, 200 S. W. (Mo. App.) 298; Gallagher v. Tipton, 133 Mo. App. 557; Benton v. St. Louis, 217 Mo. l. c. 700, et seq.]

**Dangerous Bridge: Liability of City.**

The law is thus clearly stated by VALLIANT, J., in Ely v. St. Louis, supra, page 730: "But after the ordinance for the improvement of the street has been passed and the city undertakes the work of constructing or reconstructing the street as in the ordinance is required, then the city acts in its ministerial capacity, and if in that capacity it is guilty of negligence to the injury of an individual it is liable. And so after the city has constructed the street or the sidewalk and has thereby invited the public to use it, the city is bound to keep it in condition to be reasonably safe for use and is liable as for negligence if it fails to do so. [Moore v. Cape Girardeau, 103 Mo. 470; Hunter v. Weston, 111 Mo. 176.]"

If a bridge in a highway is constructed according to plans prepared by ministerial officers of the city, in the exercise of a discretion conferred upon them by ordinance, in such manner that the bridge or some part of it

is dangerous to travelers at night, without having lights thereon, the city fails in its bounden duty to keep the highway reasonably safe for travel, and is guilty of negligence in opening and maintaining such bridge for public travel, without such lights thereon. [Loewer v. Sedalia, 77 Mo. 444; Birkhimer v. Sedalia, and other cases cited.] It is familiar law that if the city itself, or through a contractor, in improving its streets, even according to a plan enacted by ordinance, makes an excavation into which a traveler on the street, ignorant of such excavation, falls at night, owing to the failure of the city or the contractor to properly light the street or excavation, the city is liable if the traveler was himself exercising due care when he was injured. [Robison v. Kansas City, 181 S. W. 1005.] The same principle would seem to obtain where a structure is erected above the surface of the street according to plans adopted by the ministerial officers of the city. In either event the city must properly light the dangerous place at night, in order to discharge its absolute duty to exercise reasonable care to keep its streets in reasonably safe condition for travel.

The absolute duty of the city in this regard is well stated by LAMM, J., in his opinion in the Benton Case, supra, on page 700, as follows: "A city owns and controls its streets as a trustee for the public. It, therefore, stands charged by the law with the primary and bounden duty of keeping them free from nuisances, defects and obstructions caused by itself or by *third* parties if it (in the latter instance) had actual or constructive notice thereof in time to abate the nuisance, remove the obstruction or repair the defect. It cannot shirk that duty, or shift it over to, or halve it with, others. So much is clear law in Missouri. [Welsh v. St. Louis, 73 Mo. 71; Oliver v. City of Kansas, 69 Mo. l. c. 83; Carrington v. St. Louis, 89 Mo. 208; Russell v. Columbia, 74 Mo. 480; Beaudean v. Cape Girardeau, 71 Mo. l. c. 395, et seq., and cases cited; Streeter v. Breckenridge, 23 Mo. App. l. c. 250; Hill v. Sedalia, 64 Mo. App. l. c. 501, et seq.]"

The learned City Counsellor cites Seibert v. Railroad, 188 Mo. 657. But in that case the obstruction was next to the curb and left thirty-nine feet of the roadway free for travel—a greater width than the entire roadway on the bridge in question, had the center girder been absent —and, according to the admitted facts, it was plainly to be seen on account of an electric street light at the crossing where the obstruction, which was a part of a railroad-crossing gate, was located. The court properly held, in that case, that the deceased, who was familiar with the obstruction, and not the defendant, was guilty of the negligence which caused the accident. In all essential respects, the case of Atchison v. St. Joseph, 133 Mo. 563, was like the Seibert Case—the portion of the bridge collided with was to the side of the roadway and plaintiff was familiar with its location. In Gaines v. New York, 215 N. Y. 533, also cited by learned counsel for the city, the evidence showed, and the court held, that the cloud of steam which obscured the bridge and girder was so dense that lights on the bridge or girder could not have been seen had they been there, and their absence was therefore, as a matter of law, not the proximate cause of the accident. We could not so hold under the plaintiff's evidence in this case. We think there was evidence of defendant's negligence to go to the jury.

IV. Learned counsel also contend that because the city ordinance required automobiles to car-
Halving Duty With Traveler. ry headlights sending forward sufficient light to reveal objects 150 feet ahead of them, the city could rely on this being done and not illuminate such objects or defects in the street itself. But, as we have seen, the city cannot shift or delegate its duty to keep the street in reasonably safe condition for travel "or halve it with others." [Benton v. St. Louis, supra.] It is true the state law, Laws 1917, p. 412, par. 2, sec. 10, the same as the city ordinance, required headlights to have two lamps not exceeding 36 candle-power each, with ground or dimmed glass "which lamp shall produce suf-

ficient light to reveal objects 150 feet ahead.'' Such provisions, however, were intended to impose a duty upon the owners or operators of automobiles, and not upon their passengers or guests, and in no way relieved the city of its duty as to such passengers or guests to keep its streets in reasonably safe condition for travel, and to duly light dangerous places therein the same as if such act of the Legislature had not been passed.

V.   Wolff v. District of Columbia, 196 U. S. 152, is also relied on.   In that case a stepping-stone or carriage-step was on the sidewalk near the curb, over which plaintiff fell and injured himself at night, because of the absence of light.   There was no charge in that case that the location of the stepping-stone and the absence of light rendered the sidewalk dangerous or not reasonably safe for travel.   The court distinguishes that case from a structure in the middle of the traveled portion of the street by saying, l. c. 156: ''Plaintiff in error cites City of Scranton v. Callerson, 94 Pa. St. 202, and Davis v. City of Austin, 22 Texas Civ. App. 460.   In the first case an iron water-plug in the middle of the street and projecting above its surface was held to be a nuisance.   Obviously, the case is not in point.''

VI.   But was plaintiff guilty of contributory negligence as matter of law?   We think not, for the following reasons:   (a)   Because the evidence as to the rate of speed of the automobile was conflicting.   The plaintiff's evidence tended to show the rate did not exceed fifteen miles an hour, and the city speed ordinance required an excess of twenty miles an hour to be evidence of negligence and even twenty miles an hour was not made negligence *per se,* but only presumptive evidence of negligence for the consideration of the jury.   (b)   The ordinance requiring drivers of automobiles to keep to the right of the center of the street was simply intended to require them to do so when passing other vehicles in the street. In the absence of other vehicles upon the street, the driver

has a right to use the entire roadway, including the center or left side thereof. [Jackson v. Tel. Co., 219 S. W. 659.] (c) The plaintiff, not being the owner or driver of the machine, but a guest of the owner and driver, could not be charged with the driver's negligence, if he was guilty of negligence. [Corn v. Railway Company, 228 S. W. 78.] We therefore cannot find that under the record the plaintiff was guilty of contributory negligence as a matter of law.

VII. Nor did the court err in not giving defendant city's demurrer to the evidence because it gave a demurrer to the evidence for defendant Terminal Railway Company. The city was held liable on the ground **Demurrer to One Defendant.** that it invited the public to use the bridge for public travel, without sufficient lights. The Terminal Company did not open the bridge for travel and had no connection with it after it was constructed, turned over to and accepted by the city.

VIII. Appellant also complains of the action of the court in sustaining an objection to certain questions asked by defendant's counsel of the witness Williams, concerning the rate of speed the automobile was traveling. The following extract from the record shows what took place in regard to the matter complained of:

"Q. Were they going fast or slow? A. I don't know what you call fast, about 45 to 50 miles per hour.

"MR. REEDER: I object to the question, as the witness has not shown himself qualified.

"COURT: The objections are sustained. To which ruling of the court the defendant Kansas City, Missouri, by its counsel, then and there duly excepted.

"Q. How were they going, fast or slow? A. Going awfully fast; as nigh as I could judge, it looked like fifty miles per hour.

"MR. REEDER: I object to the question for the reasons above stated.

"COURT: The objections are sustained. To which ruling of the court the defendant Kansas City, Missouri, by its counsel, then and there duly excepted."

We see no reversible error in the ruling of the court. The objection was not to the answers made, but to the questions after they had been answered. There was no motion made by the plaintiffs to strike out said answers, so that they were left to stand before the jury.

IX.  The court refused to give the following instruction requested by the appellant.

"If you believe from the evidence that the sky was clear and that there was no fog or smoke about the viaduct upon which plaintiff claims to have been injured, then your verdict in this case must be in favor of defendant Kansas City."

Instruction: Omission of Material Facts.

We see no error in refusing this instruction. It fails to take in all the circumstances, and assumes, although the accident occurred at night, that, if the sky was clear and there was no fog or smoke, there would have been sufficient light from the moon and other lights, to have seen the girder in time to have avoided striking it. We think this cannot be assumed as a matter of law, but under the circumstances which plaintiff's evidence tended to show, was a jury question in this case.

·X.  Appellant complains of Instruction A, given for the plaintiff. Said instruction is quite lengthy. After requiring the jury to find the existence, location and dimensions of the viaduct, and construction thereof, with the girder in the center, it proceeds as follows: "And if you further find from the evidence that defendant, Kansas City, *negligently opened said viaduct for public use and negligently maintained the same, without lights or signals at night, to warn travelers of the existence of said girder in the center thereof*, if any, and to warn travelers of the danger of colliding with said girder, if you find there was

Negligent Maintenance.

such a girder, and that it was dangerous in the nighttime; and if you further find from the evidence that said viaduct, so constructed and maintained with said girder in the center thereof, if any, and without lights or signals, if you find from the evidence it was not lighted and without signals, constituted a dangerous obstruction in said street to travelers using the same at nighttime, and if you further find from the evidence that defendant city knew, or by the use of reasonable care and caution could have known, the dangerous condition of said viaduct at nighttime, if you find it was dangerous at nighttime, in time by the exercise of ordinary care and diligence to have remedied said dangerous condition of said viaduct, if any, before January 25, 1918, and if you further find from the evidence that Irene Boyd, the plaintiff in this case, on the 25th day of January, 1918, between eight and nine o'clock p. m., while riding south on Harrison Street in an automobile, and while exercising such care and caution for her own safety as a reasonably prudent person would exercise under the same or similar circumstances, if you so find from the evidence, was attempting to travel across said viaduct, if you so find from the evidence, and that the automobile in which she was riding, driven by one Kendrick, collided with said center girder, if any, and that plaintiff's injuries, if you find from the evidence that she was injured, were caused by the said negligent maintenance of said girder, if any, as aforesaid, without lights or warning signals, if you find it was without lights or warning signals, then your verdict must be for the plaintiff, and against the defendant, Kansas City, Missouri.''

The learned counsel for appellant objects to said instruction because the jury might infer from the language italicised that to throw the viaduct open at all would be negligence and not to maintain lights at night, even during a clear night with a full moon, might also be negligence; that the instruction practically assumes that to throw the viaduct open to public use would be negligence, and to maintain it without lights and signals would also be negligence. We think the objection is not well taken.

The whole instruction must be read.  When this is done it will be found that the right of the jury to find for the plaintiff was predicated, not upon the construction of the bridge with the girder in the center thereof, but upon the "negligent maintenance of said girder, if any, as aforesaid, without lights" or warning signals, if they found it was without lights or signals.  The "negligent maintenance" "as aforesaid" could only be found in case the jury found the facts previously required, to-wit:  That the viaduct was maintained without lights; that the absence of lights rendered said girder dangerous to travelers at night and that the city had knowledge of such dangerous condition or, by the exercise of due care, could have had knowledge thereof and remedied same prior to plaintiff's injury.  If the jury found these matters of fact, then the city negligently failed as a matter of law to exercise reasonable care to maintain its streets in a reasonably safe condition for travel and if the accident to plaintiff was caused thereby, while she was in the exercise of due care herself, which the instruction also required the jury to find, plaintiff was entitled to recover.  We think the instruction was proper.  We overrule the plaintiff's contention on this point.

.  In the view we have taken of the case it is not necessary to consider the further contention of respondent's learned counsel that said center girder was an illegal structure and a nuisance *per se,* because the franchise ordinance contemplated that there should be but one roadway on said viaduct which should extend from one sidewalk to the other.  We therefore do not determine this point.

*Nuisance.*

XI.  As to the amount of the verdict:  The verdict was for $9,000, which the court reduced to $7,500.  Appellant's learned counsel contends that it is still excessive.  The statement of the case shows her injuries—that her right leg was broken above her knee;  that it is permanently drawn and shortened two inches;  her knee and toes are turned from their natural position;  she has a decided

limp and was laid up in the hospital and at home and suffered and walked on crutches for some time.

We do not feel justified in any further reduction of the verdict. We find no error in the case. It should, therefore, in our opinion, be affirmed. But inasmuch as our opinion on the question of the sufficiency of the notice to the city is in conflict with the decision of Division No. 2 of the court in the case of Reese v. St. Louis, 216 S. W. 315, the case is transferred to Court in Banc. *Ragland, C.,* concurs; *Brown, C.,* not sitting.

PER CURIAM:—The foregoing opinion of SMALL, C., is adopted as the opinion of the court. All of the judges concur; *James T. Blair, C. J.,* in the result.