536 F.2d 27
 Howard B. BREINER, Jr., and Doris Louise Breiner, Husband and Wife
v.
C & P HOME BUILDERS, INC., et al. (two cases).
Appeal of SCHNELLMAN CONSTRUCTION COMPANY and Meinrad Schnellman.
Appeal of BOROUGH OF ALBURTIS et al.
 Nos. 75-2114, 75-2172.
 United States Court of Appeals,
Third Circuit.
 Argued March 25, 1976.
Decided May 28, 1976.
 
 Richard W. Hopkins, White and Williams, Philadelphia, Pa., for Schnellman Const. Co. and Meinrad Schnellman, appellants.
 Raymond T. Cullen, Ray R. Brennen, James L. Weirbach, Allentown, Pa., Morgan, Lewis & Bockius, Philadelphia, Pa., for Borough of Alburtis, A. L. Wiesenberger Associates, Inc., and Jerome J. Polachek, appellants.
 Thomas F. Traud, Jr., Roberts and Traud, Allentown, Pa., for appellees.
 OPINION OF THE COURT
 Before SEITZ, Chief Judge, ROSENN and GARTH, Circuit Judges.
 
 ROSENN, Circuit Judge
 
 1
 The construction of residential housing areas on heretofore undeveloped rural land is a hallmark of twentieth century America. The dislocations which often follow in the wake of such construction give rise to this case.
 
 
 2
 Plaintiffs, Doris Louise Breiner and her husband, Howard B. Breiner, Jr., own a forty-two acre farm in Lower Macungie Township in Lehigh County, Pennsylvania. They filed suit in the United States District Court for the Eastern District of Pennsylvania[1] alleging that the residential development of a tract of real estate, adjacent to their farm but located in the neighboring Borough of Alburtis, had increased the flow of surface water onto their land so that they could no longer grow strawberries commercially.
 
 
 3
 The subdivision development was undertaken by Meinrad Schnellman, who constructed about 38 houses over approximately seven years through his unincorporated business, Schnellman Construction Company (collectively "Schnellman"), and C & P Home Builders, Inc., the stock of which was wholly owned by Schnellman and his wife. Schnellman and his two companies were joined as defendants and charged with "negligence and carelessness in the construction, maintenance and use of the premises where the construction took place and adjoining roads" which allegedly caused the flooding of the Breiner farm.
 
 
 4
 A fourth defendant, the Borough of Alburtis ("Borough") issued building permits to C & P Home Builders for construction of single family residences in the Borough. The Breiners aver that the Borough was negligent and careless in "granting a building permit and failing to encore (enforce?) such as to prevent abnormal drainage of surface water and to permit the constructors to divert the normal flow of surface water."
 
 
 5
 The Borough engineers, A. L. Wiesenberger Associates, Inc., and the individual engineer assigned to Borough matters, Jerome J. Polachek (collectively "engineers"), are the other two defendants herein. The Breiners charged them with negligently preparing a subdivision plan which failed to provide for adequate surface drainage. The record shows that they did not themselves prepare a plan but rather approved the one submitted to the Borough Council by Schnellman, which the district court deemed sufficient for liability.
 
 
 6
 The case was tried to a jury. After plaintiffs had rested, the district judge granted C & P Home Builders' motion for a directed verdict since it was merely a land holding company and was not actively involved with construction activities. The remaining defendants were found liable in the sum of $36,130.
 
 
 7
 Schnellman moved for a new trial on the ground that the district judge had erred in his charge to the jury. The Borough and its engineers moved for judgment notwithstanding the verdict and for a new trial. The district court denied all the motions and entered judgment in favor of the Breiners. Breiner v. C & P Home Builders, Inc., 398 F.Supp. 250 (E.D.Pa.1975). Defendants appeal.
 
 
 8
 We affirm the judgment against Schnellman personally and Schnellman Construction Company. We reverse, however, as to the Borough and its engineers and direct the district court to enter judgment in their favor.
 
 I.
 
 9
 Schnellman objects to the judge's charge that liability could be premised on an intentional discharge of water as well as on a negligent discharge. Including intentional conduct as a basis for liability would not appear to prejudice Schnellman as it places the burden on the Breiners to prove actual knowledge. At oral argument in this court, however, Schnellman revealed his understanding of the charge was that he could be held liable merely for his intentional operations upon the land, for example, building houses or roads.
 
 
 10
 This interpretation of the charge is entirely unfounded. The district judge quite plainly did not instruct the jury that Schnellman could be found liable on some theory of strict liability for his actions in developing the land. The judge charged:Schnellman may not have actually known in performing this work that there would in fact be an unreasonable discharge of surface water on the Breiner property, but you may conclude that a reasonable person in his position should have known and that would be negligence. If you find that he actually knew, then that would be intentional.
 
 
 11
 Since Schnellman concedes that the instruction as to negligence was proper, we see no way in which he could have been harmed by the addition of an instruction on intentional torts. We, therefore, affirm the judgment against him and his company.
 
 II.
 
 12
 The Borough asserts that it cannot be held liable for issuing building permits and approving Schnellman's final plan due to the discretionary nature of these decisions. We recognize that there is an exception for the performance of a discretionary function in the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1971). See Griffin v. United States, 500 F.2d 1059 (3d Cir. 1974). We also understand Pennsylvania cases on official immunity distinguish between discretionary and ministerial acts. United States ex rel. Fear v. Rundle, 506 F.2d 331, 335 (3d Cir. 1974), cert. denied, 421 U.S. 1012, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975).
 
 
 13
 As to municipalities, however, Pennsylvania follows the fundamental principle that "liability follows tortious conduct," and its Supreme Court recently stated that it could see no reason "for permitting governmental units to escape the effect of this fundamental principle." Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A.2d 877, 882 (1973). Ayala unequivocally and unqualifiedly abrogated the doctrine of governmental immunity, expressly including within its sweep the immunity of municipal corporations. Id. at 884-86 n.8.
 
 
 14
 Writing for the majority of the Pennsylvania Supreme Court, Mr. Justice Roberts roundly condemned the traditional differentiation of the immunity doctrine between governmental and proprietary functions, a distinction which has been termed "probably one of the most unsatisfactory known to the law." 3 Davis, Administrative Law Treatise § 25.07 at 460 (1958). In doing so, the court apparently left no exception for the exercise of a discretionary function:
 
 
 15
 Moreover, "where governmental immunity has had the effect of encouraging laxness and a disregard of potential harm, exposure of the government to liability for its torts will have the effect of increasing governmental care and concern for the welfare of those who might be injured by its actions." Note, The Discretionary Exception and Municipal Tort Liability: A Reappraisal, 52 Minn.L.Rev. 1047, 1057 (1968).[2]
 
 
 16
 We must conclude that, after Ayala, municipal corporations may no longer escape the impact of liability for their activities behind the doctrinal shield of discretion. Hence, we proceed to the merits of the Breiners' claims against the Borough.
 
 
 17
 Although the Breiners' complaint charged the Borough with negligence in issuing building permits and failing to police the construction adequately, at trial they apparently developed another theory of liability on which the district judge relied to support his denial of judgment notwithstanding the verdict. According to this theory of liability, the Borough's approval of Schnellman's final plan violated its own subdivision ordinance because the ordinance would have required Schnellman to submit a formal drainage plan, which he did not do. The Borough contends that the ordinance did not apply to Schnellman because he had originally submitted his plan before the adoption of the ordinance. Further, even if the ordinance was applicable, it would not have compelled the Borough Council to require the submission of a drainage plan or to require a mechanical drainage system.
 
 
 18
 The ordinance, containing "Land Subdivision Regulations" adopted pursuant to authority granted by the Act of July 19, 1951, P.L. 1026, Section 16, took effect on February 1, 1960. Six months earlier, Schnellman had submitted his first subdivision plan to the Borough Council, which directed its engineer to review it. The plan was returned to Schnellman[3] and resubmitted almost a month after the adoption of the subdivision ordinance.
 
 
 19
 Although the Borough Council did not approve the resubmitted plan until seven years had passed, it continued to issue building permits for the subdivision during that time. Engineer Polachek testified that he delayed approval of the plan in an attempt to force Schnellman to provide surface drainage in a portion of the subdivision unrelated to the Breiner farm. Having failed in his efforts, he stated in a memorandum to the Borough Council:
 
 
 20
 The developer has failed to indicate on his drawings the means of storm drainage disposal.
 
 
 21
 Despite this notice, the Borough did not require Schnellman to remedy the implied deficiency of his final plan and approved the plan upon certification by its engineer six months later.
 
 
 22
 The Borough and its engineers were acting at all times on the advice of the Borough solicitor that Schnellman's plan was not subject to the subdivision ordinance. The district judge, however, found that the resubmission of Schnellman's plan brought it within the ordinance. As discussed hereafter, whether or not the plan is governed by the ordinance does not affect the outcome of this case, as we can find no common law or statutory duty owed to the Breiners by the Borough in any event. For the purpose of our discussion, we shall assume the applicability of the ordinance.
 
 
 23
 Since Pennsylvania courts have not ruled on the duty of a Borough to landowners outside its boundaries, we are constrained to predict how they would decide the issue. Suchomajcz v. Hummel Chemical Co., 524 F.2d 19, 24 (3d Cir. 1975). The district court instructed the jury that the Borough would be liable if it
 
 
 24
 . . . acted in a negligent manner in approving the subdivision plan in that it should have foreseen that an unreasonable quantity of surface water would be discharged upon the property of the Breiners if the subdivision were approved.
 
 
 25
 The court further charged the jury that reasonable reliance on the Borough solicitor or engineer would excuse the Borough from liability for negligence. As the jury found the Borough liable, presumably in conformity with the judge's instructions, it must have found (1) that an unreasonable increase in surface water runoff was foreseeable and (2) that the Borough did not rely on its engineer or solicitor or that it did rely but its reliance was unreasonable.
 
 
 26
 Foreseeability of injury, however, in the absence of a duty to prevent that injury, is an insufficient basis on which to rest liability. See Evans v. Liberty Mutual Insurance Co., 398 F.2d 665, 667 (3d Cir. 1968). The district judge, in disposing of defendants' post-trial motions, recognized as much when he focused upon the issue "whether or not a municipality (Borough) owes a duty to a landowner (Breiner), whose land is not within the Borough, to enforce a Borough ordinance and land subdivision regulations?" 398 F.Supp. at 253. He found such a duty owing to the Breiners.
 
 
 27
 The relevant portions of the ordinance are set out below:
 
 
 28
 ARTICLE VI GENERAL SPECIFICATIONS FOR IMPROVEMENTS
 
 
 29
 The subdivider shall complete (or furnish a proper completion guarantee for) such of the improvements as council may require in the public interest . . . . The following specifications cover only the improvements which will be required in most subdivisions . . . .Section 4 Storm and Surface Drainage
 
 
 30
 All storm drains and drainage facilities, such as gutters, inlets, bridges, storm sewers and culverts as may be required by the Borough, shall be installed by the developer and the land graded for adequate drainage. Street grades shall be such that no surface drainage is discharged over lots; where topographic conditions require that drainage ways other than streets or alleys must be employed, prepared easements shall be provided over them.
 
 
 31
 All details of drainage systems shall be shown on the Final Plan, or by means of an accompanying Drainage Plan.
 
 ARTICLE VII PRELIMINARY PLAN
 
 32
 It shall show or be accompanied by the following:
 
 
 33
 9. Proposed drainage system, showing the location and approximate sizes, capacities and grades of inlets, sewers, culverts and other structure, and where water will be drained and how it will (a)ffect adjacent properties.
 
 
 34
 We read the ordinance to require that a preliminary subdivision plan show the "inlets, sewers, culverts and other structure" of any "drainage system" proposed by the developer. (Article VII, Item 9.) The "drainage system" referred to in the ordinance is obviously a mechanical means of drainage by structures which supplement natural drainage. Only if a developer has decided to install such a system must the preliminary plan show the means of drainage; it need not indicate the details of the natural drainage system.
 
 
 35
 In addition, the Borough may require a developer to install whatever drainage facilities it deems desirable. (Article VI, Section 4.) The details of the drainage system proposed by the developer and/or required by the Borough must appear in the Final Plan (Article VI, Section 4), and the improvements must be completed or guaranteed by a performance bond. See McPherson, An Underused Form of Land Use Control Subdivision Improvement Bond Requirements, 16 Pa.B.A.Q. 461, 462-63 (1974).
 
 
 36
 Where, as here, a developer did not propose any mechanical drainage system and the Borough also did not require drainage facilities to be installed, the ordinance does not mandate the submission of a drainage plan. The Borough's approval of Schnellman's final subdivision plan without details of the drainage, therefore, does not constitute a violation of the subdivision ordinance.
 
 
 37
 Even if the Borough had violated its ordinance, the Breiners do not necessarily have a cause of action against it. As Dean Prosser reminds us, "there are statutes which are considered to create no duty of conduct toward the plaintiff, and to afford no basis for the creation of such a duty by the court." Prosser, The Law of Torts § 36 at 192 (4th ed. 1971).
 
 
 38
 The subdivision ordinance limits its purposes and its beneficiaries in the preamble:
 
 
 39
 . . . for the purpose of assuring sites suitable for building purposes and human habitation, and to provide for the harmonious development of a borough, for adequate open spaces for traffic, recreation, light and air, and for proper distribution of population, thereby creating conditions favorable to the health, safety, morals and general welfare of the citizens . . ..
 
 
 40
 The primary purposes stated are to assure suitable residential sites and to provide a planned development of the Borough. The express beneficiaries are the Borough's residents and property, not landowners outside the Borough. The Breiners' land lies in Macungie Township, not in the Borough. The ordinance is neither directed to their property nor is it directed to their person.
 
 
 41
 Hence, we are satisfied that the ordinance imposed no duty on the Borough to protect land in adjacent areas from surface water drainage. The question remains whether the Borough's issuance of building permits and approval of Schnellman's final subdivision plan, without regard to the applicability of the ordinance, constituted either the assumption of a duty to prevent negligent development or a guarantee of the adequacy of the final plan.
 
 
 42
 A building permit serves a number of purposes for a municipality, "including assurance of zoning compliance and of uniformity in assessments." Keesey v. Commonwealth, 8 Pa.Cmwlth. 445, 303 A.2d 867, 869 (1973). It does not make the municipality an insurer that the resulting structure complies with all applicable building regulations nor does it render the municipality liable for the builder's negligence.[4] See Fiduccia v. Summit Hill Construction Company, 109 N.J.Super. 249, 262 A.2d 920, 924 (1970); Annot., 41 A.L.R.3d 568 (1972).
 
 
 43
 In the instant case, the Borough's decision to issue building permits to Schnellman does not render it accountable to the Breiners for surface water runoff from the Schnellman subdivision. Indeed, the Pennsylvania Supreme Court has held that a municipality exceeds its authority when it attempts to use its power to withhold building permits to insure the safety of its residents against possible injury. Borough of Baldwin v. Matthews, 394 Pa. 53, 145 A.2d 698, 699 (1958). See also Vagnoni v. Brady, 420 Pa. 411, 218 A.2d 235, 237 (1966).
 
 
 44
 Turning to the Borough's approval of the final plan, we perceive that it involved a function in promotion of the public interest. The Borough had no private interest in the subdivision and derived no special benefit or advantage in its corporate capacity therefrom. While its officers and employees must use due care in the approval of the plan, we can discover no obligation to review the final plan for its possible ill effects on areas outside the municipal limits.
 
 
 45
 In sum, we conclude that there was no jury question presented as to the Borough's liability to the Breiners. Our study of Pennsylvania law, by which we must be guided, convinces us that the Borough owed no legal duty to the Breiners. As a matter of law, therefore, the Borough cannot be liable for the damage to the Breiners' farm.
 
 III.
 
 46
 The Borough's engineers owed it a contractual duty to review Schnellman's plan. The Borough, on the advice of its solicitor, did not require the engineers to examine the plan for compliance with the subdivision ordinance. Engineer Polachek approved the final plan, with the qualification that it did not contain any means of storm drainage disposal. We note that the plan did contain topographical details so that the natural drainage pattern was apparent. Polachek testified that he did not believe any mechanical drainage was required in the vicinity of the Breiner farm, and his memorandum to the Borough Council regarding storm drainage concerned a problem in another area of the subdivision.
 
 
 47
 One Pennsylvania court has thus outlined the duty of professionals employed by a municipality:
 
 
 48
 (W)e must hold such City employees as its engineers, architects and planners to a duty to investigate, check and verify as much of the submitted detail as may be necessary for the City to properly carry out its duties.
 
 
 49
 Pittsburgh v. Elman Associates Inc., 6 Pa.Cmwlth. 1, 291 A.2d 813, 819 (1972). The engineers in the instant case discharged the duty so described. The Borough finds no fault with their performance.
 
 
 50
 Since the Borough itself had no duty to the Breiners as to the drainage in Schnellman's development, the engineers, having carefully performed their duty toward the Borough, are also not liable. They, too, were not insurers of the plan.
 
 
 51
 In view of our conclusion that neither the Borough nor its engineers may be held liable to the Breiners, we do not need to consider the remaining contentions as to the amount of the verdict and the court's instructions to the jury.
 
 
 52
 The judgment against Schnellman individually and Schnellman Construction Company will be affirmed. The judgments against the Borough of Alburtis, A. L. Wiesenberger Associates, Inc., and Jerome J. Polachek will be reversed, and the district court will be directed to enter judgments notwithstanding the verdict in favor of these three defendants.
 
 
 
 [1]
 Jurisdiction was conferred under 28 U.S.C. § 1332 (1971) as plaintiffs are both citizens of North Carolina, defendants are all citizens of, incorporated in, or instrumentalities of the Commonwealth of Pennsylvania, and the amount in controversy exceeds $10,000
 The district court applied Pennsylvania law to this diversity action without objection by any party.
 
 
 [2]
 The article from which the court quoted recommended the elimination of Minnesota's statutory "discretionary function" exception to municipal tort liability. Id. at 1070
 
 
 [3]
 The judge found that plans were returned "for reasons that are not contained in the record." We note, however, that Polachek testified that he had reviewed the preliminary plan and suggested that a "paper street" be shown and that some lots be increased in size in order to accommodate on-site sewage disposal. He further testified "I subsequently recommended that Mr. Schnellman submit a drainage plan and probably some other minor things."
 
 
 [4]
 Under Pennsylvania law, a municipality is not readily made an insurer. For example, in Harrison v. City of Pittsburgh, 353 Pa. 22, 44 A.2d 273 (1945), the Pennsylvania Supreme Court limited the duty of the municipality to maintain sidewalks:
 The duty of the defendants was merely to maintain the pavement in a condition of reasonable safety, not to insure pedestrians traversing it against any and all accidents.
 Id. at 274.