## Erace v. Dreger

*Jay I. Bomze*, for plaintiff.
*Michael David Eiss*, for defendant City.

GAFNI, *J.*, April 23, 1979—On or about March 12, 1976, plaintiff was operating a motor vehicle in a northerly direction on 66th Street, at or near its intersection with Guyer Avenue, Philadelphia, Pa. At the same time defendant Joanne Marie Dreger was operating a motor vehicle in a westerly direction on Guyer Avenue at or near its intersection with 66th Street. Plaintiff alleges in Count I that as a result of the negligence of defendant Dreger, her motor vehicle collided with that of plaintiff, causing him serious injuries. In Count II plaintiff alleges that he sustained injuries due to the negligence of defendant City of Philadelphia. Specifically plaintiff avers that the City was:

(a) Negligent and careless in *allowing and permitting the stop sign to remain missing* for vehicles traveling on Guyer Avenue at or near its inter-

section with 66th Street, where said defendant had or should have had knowledge or notice in time *to replace or remedy said dangerous condition;*

(b) Negligent and careless in *failing to post warnings and signs of the missing stop sign* which created a dangerous condition;

(c) Negligent and careless in failing to maintain proper traffic controls at said intersection, where said condition created a hazardous condition to plaintiff and other persons. The City's preliminary objection demurred on the ground that plaintiff's complaint failed to support a valid cause of action.

A demurrer by a defendant admits every well-pleaded material fact and all reasonable inferences therefrom for the purpose of testing the legal sufficiency of the challenged pleading: International Union of Operating Engineers v. Linesville Construction Co., 457 Pa. 220, 322 A. 2d 353 (1974). In disposing of the questions of law raised by a demurrer, the issues must be resolved by the court on the basis of the pleadings alone: Duffee v. Judson, 251 Pa. Superior Ct. 406, 380 A. 2d 843 (1977). To sustain the demurrer, it is essential that plaintiff's complaint clearly indicate on its face that his claim cannot be sustained, and that the law says with certainty that no recovery is possible: Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501, 267 A. 2d 867 (1970); Papieves v. Kelly, 437 Pa. 373, 263 A. 2d 118 (1970). Most importantly, when the sustaining of defendant's preliminary objections will result in a denial of plaintiff's claim, or a dismissal of plaintiff's suit, preliminary objections should be "'sustained only in cases which are clear and free from doubt.'" Dana Perfumes Corp. v. The Greater Wilkes-Barre Industrial Fund, Inc., 248 Pa. Superior Ct. 295, 299, 375 A. 2d 105,

107 (1977). Any doubt should be resolved in favor of overruling the demurrer: Clevenstein v. Rizzuto, 439 Pa. 397, 266 A. 2d 623 (1970).

The argument underlying the City's demurrer is that because it has no mandatory duty as a matter of law to erect or maintain traffic signals, no liability can be imposed upon it for failure to exercise its discretion in such matters. It cites the language in the Act of April 29, 1959, P.L. 58, sec. 1103(a), as amended, 75 P.S. §1103(a), that "local authorities shall have power to provide by ordinance for the regulation of traffic . . ." as the statutory basis for the proposition that it has only a discretionary duty to install and maintain traffic signals.[1]

The authorities upon which it relies to support its position fall into two categories: (1) those which hold that the failure of the City to exercise a discretionary duty cannot result in the imposition of liability,[2] and (2) those which hold that because regulation of streets is a governmental function,

---

1. In its supplemental memorandum, the City argues that it exercises its discretion in erecting stop signs within the City limits pursuant to section 12.1201 to the Philadelphia Code, which was enacted pursuant to 75 Pa.C.S.A. §6122. The effective date of this new section, however, is July 1, 1977, and as the date of the accident which gives rise to the present cause of action occurred on March 12, 1976, the prior section, 75 P.S. §1103, is applicable.

2. Those cases which rely upon the discretionary duty defense are: O'Rourke v. Washington City, 304 Pa. 78, 155 Atl. 100 (1931); Doughty v. P.R.T. Company, 321 Pa. 136, 184 Atl. 93 (1936); Wecksler v. Philadelphia, 178 Pa. Superior Ct. 496, 115 A. 2d 898 (1955); Fears v. McClinton, 116 Pitts. L.J. 72 (1968); and Dattner v. Lamm, 5 D. & C. 2d 552 (1955).

the doctrine of governmental immunity bars any recovery from a municipal corporation.[3] As will be noted hereafter, there may be a distinction under the law concerning the City's initial obligation to erect stop signs as distinguished from its duty to maintain signs once erected. This opinion, however, relates only to the latter circumstance, by reason of the complaint filed.

Specifically, plaintiff's complaint alleges that the City permitted a stop sign "to remain *missing*"; that it should have had knowledge or notice in time to "*replace or remedy*" the situation; and, that it failed "to *maintain* proper traffic controls" (emphasis supplied). The inference which this court draws from these factual allegations is that plaintiff is contending the City had, at one time, placed a stop sign at the intersection of 66th Street and Guyer Avenue, and was negligent in failing to replace it when it was later missing.

Restatement, 2d, Torts, §323, provides general guidance on the obligations assumed by one who undertakes a discretionary duty:

"Negligent Performance of Undertaking to Render Services

"One who undertakes, gratuitiously or for consideration, to render services to another which he

---

3. Those cases which rely in part upon governmental immunity are: Doughty v. P.R.T. Company, supra; Wecksler v. Philadelphia, supra; Fears v. McClinton, supra; Jamison v. City of Pittsburgh, 360 F. 2d 162 (3d Cir. 1966). To the extent that they rely upon that defense they have been overruled by Ayala v. Philadelphia Board of Public Eduction, 453 Pa. 584, 305 A. 2d 877 (1973), which abolished that doctrine and eliminated the distinction between governmental and proprietary functions: 453 Pa. at 597-599.

should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care *increases the risk* of such harm, or (b) the harm is suffered because of the other's *reliance* upon the undertaking." (Emphasis supplied.)

Section 323 has been expressly adopted as the law in Pennsylvania: DeJesus v. Liberty Mutual Ins. Co., 423 Pa. 198, 223 A. 2d 849 (1966); Brown v. Travelers Ins. Co., 434 Pa. 507, 254 A. 2d 27 (1969); Hamil v. Bashline, 481 Pa. 256, 392 A. 2d 1280 (1978).

Recognition of the principles underlying section 323 of the Restatement 2d insofar as they apply to municipalities is found in D. Blashfield, 4 Automobile Law and Practice §161.17 (3d ed. 1965), which notes that in a number of jurisdictions a distinction for liability purposes is drawn between the discretionary determination to erect a sign and the continuing duty to maintain such a sign:

"Thus it has been held that, while the highway authority is not liable for failure to enact an ordinance or resolution providing for traffic signs or for the failure to implement and carry out its decision to erect 'stop' signs, or for the decision to remove a 'stop' sign previously erected, or for a decision to place a 'stop' sign at a particular place, it is liable for a failure properly to maintain 'stop' signs which it has erected." 4 Blashfield, supra, §161.17 at 333-334.

For example, in Wagshal v. District of Columbia, 216 A. 2d 172 (D.C. App. 1966), an action by a motorist involved in an intersectional collision

against the District of Columbia for its alleged negligence in failing to maintain a stop sign, the District of Columbia Court of Appeals held:

". . . whereas . . . the District cannot be held liable for a failure to exercise its discretionary, quasi-legislative powers to control traffic at an intersection, here we have a situation where after a decision had been made to regulate traffic, the intersection was allowed to become unregulated and unsafe through negligence—not pursuant to a studied, reasoned decision. The District need not have put up the sign, but once it did, it had a duty to maintain it properly in order to keep the intersection reasonably safe for motorists . . . The absence of the sign in the place where it had stood for a considerable time created an unsafe condition every bit as dangerous as a hole in the roadway or an obstruction." 216 A. 2d at 174.

In Firkus v. Rombalski, 25 Wis. 2d 352, 130 N.W. 2d 835 (1964), the Supreme Court of Wisconsin drew a similar distinction emphasizing the reasons why liability should be imposed on the municipality:

"The town had no affirmative duty to erect the sign in the first instance, but having done so it was incumbent upon it to properly maintain the sign as a safety precaution to the traveling public who has the right to rely on its presence . . . The potentiality of a dangerous situation is greatly increased by the failure to maintain warnings upon which the public has come to rely. It is the creation of the right of reliance and its protection which is the basis of the duty. It is not unlike the doctrine of equitable estoppel in the field of contracts." 25 Wis. 2d at 358, 130 N.W. 2d at 838.

In the instant case, the City has allegedly undertaken to exercise a discretionary duty to regulate traffic by erecting a stop sign at a given location. It has, thereby, recognized the need to take such action for the protection of motorists who may come to rely upon the existence of that sign at that intersection in governing their driving patterns. The reasonableness of such reliance is further reinforced by the fact that, as plaintiff argues, while this stop sign was missing, all of the other intersecting streets with 66th Street in the area where plaintiff was traveling still had stop signs posted. Plaintiff, therefore, would have had no warning that a previously controlled intersection at 66th Street and Guyer Avenue was now uncontrolled for cross-traffic. By failing to exercise due care in maintaining the stop sign at that intersection, the City had arguably increased the risk of accidents involving motorists who indeed had come to rely upon the sign. Such reliance would never have been induced or developed had the City not initially installed a stop sign there.[4]

---

4. That municipalities may be liable for failure to maintain highways in a safe condition has long been recognized in Pennsylvania. In Nelson v. Duquesne Light Co., 338 Pa. 37, 12 A. 2d 299 (1940), the Supreme Court of Pennsylvania held that: "Municipalities which have full and complete control over the streets and highways within their corporate limits are liable in damages for injuries sustained in consequence of their failure to use reasonable care to keep them in a reasonabvly safe condition for public travel." 338 Pa. at 42. In Nelson, the court relied in part upon Stern v. International Ry. Co., 220 N.Y. 284, 115 N.E. 759 (1917) (opinion by Cardozo, *J.*), which said: "'It cannot be held as a general proposition that a city may excuse itself from a charge of negligence as to the condition and care of its streets, merely by claiming that it [had] acted judicially in

This court concludes, therefore, that without regard to whether liability attaches for failure to exercise a non-mandatory duty, the failure to maintain a condition upon which others have come to rely could impose a continuing duty in light of plaintiff's specific allegations as to the City's prior exercise of discretion.

The case primarily relied upon by the City to support its discretionary duty defense is Fears v. McClinton, 116 Pitts. L.J. 72 (1967). In Fears, an accident had occurred as a result of completely inoperative traffic signals. In sustaining the City of Pittsburgh's demurrer, the court cited as one of the reasons for its decision:

". . . the City owed no duty to erect a traffic signal at this (or at any other) intersection and there was therefore no duty to assure its uninterrupted operation. A traffic signal that is completely inoperative cannot impose any liability on the City . . . Because the authority granted to the City to erect and maintain traffic signals is discretionary, no legal duty is imposed on the City to maintain them and to assure their constant functioning: Doughty [v. Philadelphia Rapid Transit Company, 321 Pa. 136 (1936)]; Wecksler et al. v. Philadelphia, 178 Pa. Super. 496 [(1955)]." 116 Pitts. L.J. at 73.

---

its streets, merely by claiming that it [had] acted judicially in determining to leave the street in a dangerous condition for public travel.'" 338 Pa. at 47. Similarly, in Dattner v. Lamm, supra, despite its holding that there was no absolute duty upon the city to keep streetlights illuminated where a collision occurred, the court stated: "Where there is an obstruction or dangerous condition in a street the city may be held accountable because of the inadequacy of the warning." 5 D. & C. 2d at 553.

Fears is distinguishable, however, in that an inoperative traffic signal, which is visible, is more likely to put a driver on notice of the potential danger of not stopping than would a missing stop sign. Significantly, plaintiff points out in its brief that in Fears both vehicles approaching the intersection were alerted to the inoperability of the traffic signal. The drivers, therefore, should have been aware of the uncontrolled traffic situation and could not have relied to their detriment on the existence of prior operational controls. In the instant case, however, the physical absence of a previously existing stop sign for cross-traffic cannot be deemed to alert motorists of the potential danger of traffic not stopping.

Moreover, the only two cases citing Fears have not accepted the position therein that a municipality can never be liable even after it has failed to maintain a condition created by the earlier exercise of its discretion.[5]

The most recent Pennsylvania state court decision interpreting Fears is Simson v. Szczur (C.P. Philadelphia County 1978) (Marutani, *J.*), Legal Intelligencer, October 4, 1978. There the City of Philadelphia demurred to a complaint which al-

---

5. In Gallagher v. Kuehneisen, 118 Pitts. L.J. 331 (1970), a case which succeeded Fears, plaintiffs alleged that the township was negligent in that no repairs were made to a knocked down traffic signal; nor was any sign or other warning device posted; nor was any person posted to warn traffic using the intersection that the one signal had been knocked out, 118 Pitts. L.J. at 331. Because this decision discussed Fears only to the extent that it relied on the governmental immunity defense it is inapposite to the discussion above. But the holding is instructive in that it recognized the possibility of liability due to a *partially operating* system of traffic controls as distinguished from liability regarding the initial provision or withdrawal of operating traffic controls (emphasis added).

leged its failure to maintain traffic signals where both traffic lights at an intersection were green for vehicles approaching from two directions. In overruling the City's demurrer, the court drew a distinction for purposes of summary disposition between the inoperative traffic signal in Fears and a defectively operating signal, stating, at p. 12:

"[A] malfunctioning traffic control may reasonably mislead either or both motorists. It is this last situation which is presented in the instant case. If, indeed, a municipality negligently permits a 'trap' to exist at an intersection to which the reasonably alert but unwary motorist falls victim, then there well may be an act of commission or omission for which the municipality may be answerable. However, to reiterate, this is a matter for resolution by a fact-finder, and not a matter for summary disposition by preliminary objections."

The Simson opinion suggests that this court should, at the outset, find a duty on the part of the municipality to maintain traffic signals so as to prevent the existence of a trap for motorists. Beyond that, it cautions against sustaining a demurrer which would eliminate the plaintiff's cause of action for breach of that duty before crucial factual determinations are made. As noted in Simson, supra, p. 12, n. 8:

"We do not, of course, purport to determine in any manner the claim of negligence. There are many unanswered questions toward resolving that issue. To suggest but one question: was the traffic light in question malfunctioning as claimed, for a sufficient length of time to impose an attendant duty upon defendant City?"

Similar questions which arise in this case would be: what was the extent of the actual danger the

absence of the sign presented; how long had the sign existed at that intersection as compared to how long it had been missing; and, what were the driving patterns and systems of traffic controls in the neighboring streets and intersections?

A very recent case in the Eastern District of Pennsylvania, David v. Broadway Maintenance Corp., 451 F. Supp. 877 (E.D. Pa. 1978), provides further support for the conclusion that liability may be imposed upon the City under the facts alleged. In David, the court denied a motion for summary judgment by Broadway, a streetlight maintenance company hired by the City of Philadelphia. The complaint alleged that defendant was negligent in "not maintaining and/or replacing" the streetlights in question. Defendant countered that as the City of Philadelphia was under no duty to provide streetlights in the first instance, it was not liable for failure to maintain them. For this proposition it relied upon Thompson v. Springfield Water Co., 215 Pa. 275, 64 Atl. 521 (1906), which held that a municipality or its agent could not be held liable for negligently interrupting, or even discontinuing, a service it was not required to provide in the first instance. The court in David v. Broadway Maintenance Corp., supra, noted, however, that the authority of Thompson had been significantly undermined by two companion cases decided by the Supreme Court of Pennsylvania in 1964: Malter v. South Pittsburgh Water Co., 414 Pa. 231, 198 A. 2d 850 (1964), and Doyle v. South Pittsburgh Water Co., 414 Pa. 199, 199 A. 2d 875 (1964). The court quoted from Doyle:

". . . 'the water company is not charged with the failure, through the municipality, to perform an act, which the court in the Thompson case said was a discretionary act . . . Discretion having been

exercised and the physical fact of that exercise having become a fait accompli, reasonable care in the maintenance and repair of the planted hydrants became imperative.' [414 Pa. at 206-207.] In short, Thompson would aid the defendant here only if David [the plaintiff] sought to recover from breach of a duty to provide street lights. The complaint, however, clearly alleges negligence in 'maintaining and/or replacing' the street lights in question . . . '[T]his allegation of negligence exemplifies the type of conduct for which liability could be imposed under the Doyle precept.'" 451 F. Supp. at 880-881.

The court held, therefore, that Broadway, as the City's agent, was not shielded from liability simply because the City could have chosen not to install streetlights at all. The complaint in the instant case, as in David v. Broadway Maintenance Corp., supra, clearly alleges negligence for "failure to maintain" rather than for "failure to provide" in the first instance.[6] Because plaintiff's allegations of negligence exemplify the type of conduct for which liability could be imposed under David v. Broadway Maintenance Corp., defendant's demurrer should clearly be overruled.

In addition, it should be noted that recent decisions of the Court of Appeals for the Third Circuit

6. Furthermore, the City in both David v. Broadway Maintenance Corp. and in the present case, relied on Dattner v. Lamm, supra, to support its discretionary duty defense. Dattner had held that the City of Philadelphia was not liable for failure to maintain streetlights even once installed. As the court in David points out, Dattner v. Lamm relied primarily on Thompson v. Springfield Water Co., supra, "which is no longer very weighty authority." 451 F. Supp. at 881 (see discussion infra), and thus provides even less support for the City's argument in this case.

and the District Court of the Eastern District of Pennsylvania suggest that the discretionary duty defense may have been bottomed in part upon the governmental immunity defense, and that the abolition of the doctrine of governmental immunity in Ayala v. Philadelphia Board of Education, supra, also removed a municipality's absolute freedom from liability despite the exercise of a discretionary duty.

In Breiner v. C & P Home Builders, Inc., 398 F. Supp. 250 (E.D. Pa. 1975), the precise issue was whether a municipality (the Borough) owed a duty to a landowner, whose land was not within the Borough, to enforce an ordinance and land subdivision regulations. The court, per Bechtle, *J.*, said:

"Until the Supreme Court of Pennsylvania handed down its decision in Ayala v. Philadelphia Board of Education, [supra], abolishing the doctrine of governmental immunity with respect to municipal corporations, the Borough may have had a tenable argument as to its lack of duty . . . Implicit in Ayala, [supra], are some of the policy reasons as to why municipalities should be held accountable for their negligent discretionary acts, as well as negligent proprietary acts." 398 F. Supp. at 255-256.

The court went on to note those various policy reasons such as the ability of the municipality to bear losses due to tortious conduct; the availability of public insurance to protect the public treasury against possible damage claims; and, the sobering effect such an imposed duty will have on municipalities and their officers.

The Court of Appeals in Breiner v. C & P Home Builders, Inc., 536 F. 2d 27 (3d Cir. 1976), reversed the lower court on other grounds, finding that even

if the Borough had violated its ordinance, it could not be held liable since the ordinance imposed no duty upon it to protect land in adjacent areas. Nonetheless, the appellate court in Breiner affirmed the District Court's reading of Ayala, supra, and held that the Borough could not escape any liability on the ground that its actions were merely discretionary:

"Writing for the majority of the Pennsylvania Supreme Court, Mr. Justice Roberts roundly condemned the traditional differentiation of the immunity doctrine between governmental and proprietary functions, a distinction which has been termed 'probably one of the most unsatisfactory known to the law.' 3 Davis, Administrative Law Treatise §25.07 at 460 (1958). In doing so, the court apparently left no exception for the exercise of a discretionary function: . . . 'where governmental immunity has had the effect of encouraging laxness and a disregard of potential harm, exposure of the government to liability for its torts will have the effect of increasing governmental care and concern for the welfare of those who might be injured by its actions.' Note, the Discretionary Exception and Municipal Tort Liability: A Reappraisal, 52 Minn. L. Rev. 1047, 1057 (1968). *We must conclude that, after Ayala, municipal corporations may no longer escape the impact of liability for their activities behind the doctrinal shield of discretion.*" (Emphasis supplied.) 536 F. 2d at 30 (1976).

Similarly, in David v. Broadway Maintenance Corp., supra, defendant had argued that as the City had no duty to provide streetlights, it was not liable for failure to maintain them. The court noted, however, that "this point apparently has not been reexamined since the Supreme Court of Pennsylva-

nia abolished municipal tort immunity in Ayala v. Philadelphia Bd. of Public Educ.," supra, 451 F. Supp. at n. 3, 879.

In summary, then, the decision in Ayala lays open to considerable doubt the continued vitality of the discretionary exception to municipal liability. Even if that doctrine is still viable, however, this court is of the firm opinion that it cannot extend to shield a municipality which has elected to exercise its discretion and undertake certain obligations.

There are, of course, many factual issues which must be determined in deciding whether the City has breached its duty or is liable under the circumstances of this case. In overruling the demurrer, however, this court is holding only that if the City installed a stop sign at the intersection in question, it cannot now be said as a matter of law that the City had no duty to replace the sign or warn of its absence.[7]

Accordingly, the court enters the following

---

7. It should be noted that the holding of this case has apparently been incorporated by statute in section 202(b)(4) of the Political Subdivision Tort Claims Act of November 26, 1978, P.L. 1399, 53 P.S. §5311.101 et seq., which specifically provides that the following acts or activities by a political subdivision or any of its employes may result in the imposition of liability: "(4) A dangerous condition of traffic lights, lights or other traffic controls, street lights or street lighting systems or trees under the care, custody or control of the political subdivision, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the political subdivision had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition." §5311.202. As the effective date of this act was January 25, 1979, it is inapplicable to the instant cause of action which arose on March 12, 1976.

## ORDER

And now, April 23, 1979, upon consideration of the preliminary objections in the nature of a demurrer filed by defendant City of Philadelphia to the complaint of John Erace, Jr., and the answer thereto, it is ordered that defendant City's preliminary objections are overruled. Defendant City of Philadelphia shall have leave to file an answer to the complaint within 20 days from the date of this order.

