Stacey HORNEYER, Plaintiff–
Appellant,

v.

CITY OF SPRINGFIELD, Defendant–
Respondent.

No. 25031.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 5, 2003.

Petition for Rehearing and Transfer
Denied Feb. 26, 2003.

Application for Transfer Denied
April 1, 2003.

Alan Kimbrell, Chesterfield, for appellant.

Rex C. McCall, Springfield, for respondent.

JAMES K. PREWITT, Presiding Judge.

Stacey Horneyer ("Appellant") brought this action against the City of Springfield ("the City") following a vehicle collision that occurred in the City at the intersection of Chestnut Expressway and East Trafficway, where Appellant's vehicle was struck by another vehicle being driven at night with its headlights off. The trial court granted summary judgment in favor of the City. With one point relied on, Appellant contends that the trial court erred because the City failed in the duty it assumed, when it undertook to light the intersection, to exercise a high degree of care in the continued illumination of that intersection.

■ We review the grant of summary judgment *de novo. Murphy v. Jackson Nat'l Life Ins. Co.,* 83 S.W.3d 663, 665

(Mo.App.2002). On appeal, we view the record in the light most favorable to the party against whom judgment was entered, and afford the non-movant the benefit of all reasonable inferences from that record. *Winn ex rel. Winn v. Pollard,* 62 S.W.3d 611, 614 (Mo.App.2001). If the trial court's judgment does not specify the basis upon which summary judgment was granted, we will uphold the decision if it was appropriate under any theory. *Murphy,* 83 S.W.3d at 665.

■ If there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Daniels v. Senior Care, Inc.,* 21 S.W.3d 133, 135 (Mo. App.2000). The key to summary judgment, however, is the undisputed right to judgment as a matter a law, not simply the absence of a question of fact. *Murphy,* 83 S.W.3d at 665.

On September 20, 1999, Appellant had returned to the City after visiting her parents in St. Louis, and was traveling westbound on Chestnut Expressway. She pulled into the turnoff lane in order to turn onto East Trafficway, stopped at the yield sign, looked both to the right and to the left, saw the headlights of a vehicle approaching the intersection that she estimated was over 300 feet away, and proceeded to cross the eastbound lanes of Chestnut Expressway. As she pulled into the eastbound lanes of Chestnut Expressway, Appellant's vehicle was struck by a car driven by Heather Baker, which was being driven with its headlights off. The time of the collision was approximately 8:20 p.m. and it was "completely dark" at the intersection at that time.[1]

1. Appellant states that the sun set that day at 6:14 p.m. and the City states that it was 7:14 p.m. Although we may take judicial notice of the time of sunset, since the City does not dispute Appellant's contention that it was

dark at the time of the collision, we will not discuss the sunset discrepancy any further. *See Larrea v. Ozark Water Ski Thrill Show, Inc.,* 562 S.W.2d 790, 792 (Mo.App.1978). In addition, the appeal before us only concerns

The streetlights in place at this intersection were not functioning at the time of the collision and had been off since at least September 9, 1999, due to a faulty controller. The City and Appellant agree that the collision would not have occurred if Appellant had seen Baker's car prior to attempting to cross the intersection. The City has an ordinance under which "[n]o person shall drive a vehicle during the period from one-half hour after sunset to one-half hour before sunrise without front and rear lights, which shall meet the requirements of state law." Under state statute, headlights or "lighted lamps" are required "at any time from half-hour after sunset to a half-hour before sunrise." § 307.020(9), RSMo Supp.1999.

Appellant brought this action against the City, alleging that the intersection was "unreasonably dangerous and hazardous" and that "at the time of the ... collision the overhead lighting devices at the intersection were not illuminated." The City filed a motion for summary judgment in which it argued that it "had no duty to light the intersection so that [Appellant] could see a vehicle operating illegally with no headlights." The trial court granted summary judgment in favor of the City, stating only that there was no genuine issue of material fact and the City was entitled to summary judgment as a matter of law. This appeal followed.

In her single point on appeal, Appellant contends that the trial court erred in granting summary judgment in favor of the City because the City failed in the duty it assumed, when it undertook to light the intersection where Appellant's vehicle was struck by another vehicle being driven with its headlights off, to exercise a high

degree of care in the maintenance of the illumination of that intersection.

We begin our analysis by addressing the issue of sovereign immunity. The doctrine of sovereign immunity provides public entities with protection from liability for negligent acts. *Benoit v. Missouri Highway and Transp. Comm'n*, 33 S.W.3d 663, 673 (Mo.App.2000). A municipal corporation is a "public entity" within the meaning of §§ 537.600 and 537.610, RSMo Supp.1999. *Thompson v. City of West Plains*, 935 S.W.2d 334, 337 (Mo.App. 1996).

Under longstanding Missouri law, a city is not immune for neglect or breach of a ministerial duty, whereas, it is generally immune from suit in its performance of governmental duties. *See Metz v. Kansas City*, 229 Mo.App. 402, 81 S.W.2d 462, 465–66 (1935). At one point in Missouri law, the installation and maintenance of streetlights was considered a governmental duty; however, cases in which that basis was used to grant sovereign immunity were later overruled. *Wilkes v. Missouri Highway and Transp. Comm'n*, 762 S.W.2d 27, 28–29 (Mo.banc 1988).

Disregarding the ministerial/governmental distinction, under the provisions of § 537.600, RSMo Supp.1999, sovereign immunity may also be waived in cases where the injuries are caused by the dangerous condition of a public entity's property. *Thompson*, 935 S.W.2d at 337; § 537.600.1(2), RSMo Supp.1999. This dangerous condition exception to sovereign immunity refers only to physical defects in a public entity's property. *Oldaker v. Peters*, 869 S.W.2d 94, 99 (Mo.App.1993). Lack of adequate lighting that renders property not reasonably safe for its intead-

---

this action against the City, which does not include any claim against the driver of the

other vehicle, Heather Baker.

ed purpose is, under certain circumstances, considered such a physical defect. *Id.* It fits within the exception where a duty exists to provide the lighting. *Id.*

■ In an action for negligence, a plaintiff must establish three items: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the failure of the defendant to perform that duty; and (3) the defendant's failure to perform that duty proximately caused injury to the plaintiff. *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr., Co., L.P.,* 75 S.W.3d 247, 257 (Mo.banc 2002).

■ Whether a duty exists is a question of law. *Benoit,* 33 S.W.3d at 668. For a duty to exist, it must be foreseeable that the action or omission will cause harm or injury. *L.A.C.,* 75 S.W.3d at 257. If the existence of a duty is established, it is not a duty to protect against every possible injury that might occur. *Id.* In particular, a public entity does not have a duty to protect against all possible injuries, only those that are reasonably foreseeable. *Benoit,* 33 S.W.3d at 668. Foreseeability is generally measured according to whether a reasonably prudent person (or entity) would have anticipated danger and provided against it. *L.A.C.,* 75 S.W.3d at 257.

■ Thus, we must determine whether, under the circumstances of this case, a duty existed on the part of the City to protect Appellant from injury. Along with foreseeability, determining whether a duty exists in a particular case involves consideration of the likelihood of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Benoit,* 33 S.W.3d at 668.

■ There is no common law duty to provide streetlights. *Carruthers v. City of St. Louis,* 341 Mo. 1073, 111 S.W.2d 32, 35

(1937). However, a city has the duty to construct and maintain its streets in such condition that they will be reasonably safe and therefore, a city is liable for injuries caused by negligent construction or by a failure to keep the streets from nuisances, defects, and obstructions caused by itself or by third parties if it had actual or constructive notice in time to appropriately address the nuisance, defect, or obstruction. *Id.* at 36.

■ A city must properly light a dangerous place at night in order to discharge its absolute duty to exercise reasonable care to keep its streets in reasonably safe condition for travel. *Metz,* 81 S.W.2d at 467. Provisions in city ordinances, such as an ordinance requiring the illumination of headlights during certain parts of the day, do impose a duty on the operators of vehicles, but do not relieve a city of its duty to keep its streets in a reasonably safe condition for travel and to properly light dangerous places along those streets. *Boyd v. Kansas City,* 291 Mo. 622, 237 S.W. 1001, 1008 (banc 1922).

In *Metz,* the court found that Kansas City had a duty to maintain lighting at an island and the curb surrounding it. *Metz,* 81 S.W.2d at 472. The evidence in *Metz* showed that travelers frequently ran into the island and knocked down whatever warning lights were there and that the city assigned employees to check the area each day to check the lights and replace as needed. *Id.* at 469. There were no lights at the time of the collision in *Metz.* Id. Based upon the city's recognition that lighting was necessary, the city had a duty to maintain such lighting. *Id.*

*Boyd* involved a bridge dangerous to travelers at night without lights on it, and the city was found to have failed in its duty to keep its streets reasonably safe for travel by opening and maintaining the bridge

without lights. *Metz*, 81 S.W.2d at 467. As noted earlier, an ordinance regarding headlights on vehicles did not relieve the city of its duty. *Boyd*, 237 S.W. at 1008.

Neither *Metz* nor *Boyd* have fact situations that make them directly on point with the facts here. However, there are no other cases in Missouri that closely match the fact scenario either. Other states have decided cases with more similar circumstances to the case at bar and have addressed the existence of duty associated with the absence of light at the site of a vehicle collision where lights existed but were inoperable at the time of the collision. We will consider these cases and attempt to reconcile them with Missouri law.

In a federal case that applied Pennsylvania law, a district court determined that summary judgment in favor of the corporation that had contracted with the city of Philadelphia to maintain and repair the streetlights was inappropriate. *David v. Broadway Maint. Corp.*, 451 F.Supp. 877, 882 (E.D.Pa.1978). The court agreed that Philadelphia had no duty to install streetlights, but found that the authority in Pennsylvania law that indicated no duty existed to maintain streetlights was no longer "weighty" authority. *Id.* at 879, 881. The court determined that recent cases, which established a duty existed to maintain services once they were undertaken, were more on point than the less recent cases. *Id.* at 881.

In *David*, the plaintiff, who was outside of his vehicle attempting to aid a man in a burning vehicle, was struck by a vehicle being driven without its headlights. *Id.* at 878, 882. The court, however, stated that such a negligent intervening act of a third party would not necessarily relieve Broadway of liability unless the act was so extraordinary as to not have been reasonably foreseeable. *Id.* at 882. It left that proximate cause issue for the jury. *Id.*

A Pennsylvania trial court decided a case a year later in which it used the same reasoning as *David* and determined that the failure to maintain a condition upon which others have come to rely (a stop sign) could impose a continuing duty. *Erace v. Dreger*, 12 Pa. D. & C.3d 390, 397–98 (Pa. Common Pleas 1979). The court distinguished *Erace* from cases where a traffic light was inoperable, as drivers would be visually aware, from situations where a stop sign or yield sign was missing, under which drivers are not put on notice of the dangerous condition. *Id.* at 398.

Where a person was hit while attempting to retrieve a flare from the trunk of his vehicle at an intersection where the streetlights were inoperable, the Illinois Supreme Court determined that when a city undertakes to provide lights at an intersection or along its streets, it is liable for injuries that result from deficient or inadequate lighting. *Greene v. City of Chicago*, 73 Ill.2d 100, 22 Ill.Dec. 507, 382 N.E.2d 1205, 1206, 1209 (1978). The Court specifically noted that it did not agree with the contention that the rule applied only when the lights were originally placed for the purpose of warning of a defect or hazard. *Id.* at 1209. The driver of the vehicle that struck the plaintiff in *Greene* was intoxicated and the Court addressed that fact by noting that the intervention of a criminal act did not necessarily interrupt the cause and effect between negligence and an injury, if the criminal act could have been reasonably foreseen. *Id.* at 1211.

In a case from Michigan, a pedestrian was hit by a car in an area where the streetlights were not working. *Hren v. Detroit Edison*, 450 Mich. 1006, 547 N.W.2d 663 (1996). The Michigan Supreme Court reversed the grant of sum-

mary judgment in favor of the company that had contracted with the city to maintain the streetlights, as it agreed with jurisdictions, citing Pennsylvania in particular, that had abandoned the rule that no duty existed to maintain a service that had been implemented. *Id.*

In a California case, a cyclist was injured when struck by a vehicle at an intersection with nonfunctioning streetlights. *White v. Southern California Edison Co.,* 25 Cal.App.4th 442, 445–46, 30 Cal.Rptr.2d 431 (Cal.App.1994). The utility company was under contract with a public entity to maintain and repair the streetlights. *Id.* at 446, 30 Cal.Rptr.2d 431. The court discussed duty and defined it as "an allocation of risk determined by balancing the foreseeablity of harm, in light of all of the circumstances, against the burden to be imposed." *Id.* at 447, 30 Cal.Rptr.2d 431. The factors considered in the determination of whether a duty existed included the foreseeability of harm to the plaintiff; closeness of the connection between the defendant's conduct and plaintiff's injury; moral blame associated with the defendant's conduct; policy of preventing future harm, extent of burden to the defendant; and availability, cost, and prevalence of insurance for the risk. *Id.*

The *White* court agreed with rationale of other jurisdictions and stated that, at most, the failure of a public utility to provide adequate street lighting was the deprivation of a benefit, and not the violation of a duty. *Id.* at 450, 30 Cal.Rptr.2d 431. Based on policy considerations, the court found the burden too great to impose a duty, given the large number of streetlights, the likelihood that they will periodically be nonfunctioning, the small probability that any single inoperable light will be the cause of a motor vehicle collision, the availability of automobile insurance, and that motor vehicles usually operate at

night with headlights on. *Id.* at 451, 30 Cal.Rptr.2d 431.

The court concluded that liability could not be imposed on a public utility where the streetlight is not necessary to prevent a dangerous condition, the failure to maintain the streetlight does not create a greater risk than would be apparent in the complete absence of a streetlight, and the injured party has not relied on the operation of the streetlight (i.e., a pedestrian choosing a particular route home due to presence of streetlights). *Id.* The *White* court indicated that the same rule would apply to municipalities, and that a duty to maintain streetlights would only arise if some dangerous or peculiar condition existed that rendered the lighting necessary to make the streets safe for travel. *Id.*

Other jurisdictions have arrived at a similar conclusion as *White.* The Oklahoma Supreme Court stated in a case from the 1920s that the failure of a city to maintain streetlights would not, in many instances, be pertinent to a situation where the injuries were sustained during travel on the city's streets. *City of Kingfisher v. Williams,* 133 Okla. 260, 272 P. 363, 365 (1928). The court indicated that this general rule would not apply in situations where a street was in a dangerous or unsafe condition; then the city would be required to maintain some sort of lighting or signal to warn of the danger. *Id.*

New York has stated a similar rule in several recent cases in which both New York's Court of Appeals and its intermediate level Supreme Court have declared that a city's "duty to maintain existing [streetlights] is limited to those situations in which illumination is necessary to avoid dangerous and potentially hazardous conditions." *Cracas v. Zisko and Town of Brookhaven,* 204 A.D.2d 382, 383, 612 N.Y.S.2d 55 (N.Y.App.Div.1994); *see also Abbott v. County of Nassau,* 223 A.D.2d

662, 662, 637 N.Y.S.2d 216 (N.Y.App.Div. 1996); *Thompson v. City of New York,* 78 N.Y.2d 682, 578 N.Y.S.2d 507, 585 N.E.2d 819, 820 (1991).

In *Thompson,* where a pedestrian was struck by a vehicle near an intersection with inoperable streetlights, the Court of Appeals indicated that the plaintiff had the burden of showing that by failing to replace the burned-out streetlight, the city had created a dangerous condition on the street. *Thompson,* 578 N.Y.S.2d at 509, 585 N.E.2d 819. According to the Court, at best, the intersection was large and quite busy; however, this condition existed at many intersections and "[t]he mere outage of the streetlight did not render this reasonably safe street dangerous." *Id.*

A Massachusetts case specifically followed the analysis in *White* from California and found that the burden of imposing a duty on a public utility that was under contract with a city to maintain its streetlights was too great. *Vaughan v. Eastern Edison Co.,* 48 Mass.App.Ct. 225, 719 N.E.2d 520, 523 (1999). In *Vaughan* a pedestrian had been struck in a crosswalk on a college campus, where the streetlights designed to illuminate the crosswalk were inoperable. *Id.* at 521.

A recent Florida case followed *White* and *Vaughan. Martinez v. Florida Power and Light Co.,* 785 So.2d 1251, 1253 (Fla. App.2001). The *Martinez* court reiterated the theory of *White* that the failure to maintain adequate lighting, at most, was a deprivation of a benefit, and not the violation of a duty. *Id.* The court also stated that as long as the streetlights were not necessary to prevent a dangerous condition, the failure to maintain them did not create a greater risk than the complete absence of streetlights. *Id.* Therefore, according to the court, the injured party could not have relied on the operation of the streetlights. *Id.*

In an earlier Georgia case that involved the collision of two vehicles at a place where the streetlight was temporarily inoperable, the appellate court noted that cases in which it was found that the city had a duty to maintain streetlights also involved some defect, obstruction, or excavation in the street. *Quinn v. Georgia Power Co.,* 51 Ga.App. 291, 180 S.E. 246, 248 (1935).

An early case of the Utah Supreme Court concluded that it was not the duty of a city to maintain streetlights, although it may be its duty to put up a barrier and lights, but only in situations where such lights or barriers were for the purpose to warn of an unsafe or dangerous condition in the street. *Sweet v. Salt Lake City,* 43 Utah 306, 134 P. 1167, 1174 (1913).

In a superior court case from Connecticut, a pedestrian sustained injuries following a fall from a sidewalk at a place where a streetlight was nonfunctioning. *Todd v. Northeast Utilities,* 40 Conn.Supp. 159, 484 A.2d 247, 248 (1984). The court determined that the public utility had notice of the defective light and that it was foreseeable that an inoperable streetlight would cause the danger to which the pedestrian was exposed. *Id.* at 249. Therefore, a duty existed; however, the duty imposed on the defendant only existed for the public utility to rectify a dangerous situation. *Id.*

 The theme we derive from this analysis of cases from other jurisdictions is a rule that fits well with Missouri law, including that contained in *Boyd* and *Metz.* Although some of the cases involved municipalities and some involved public utilities, one underlying fact was true—the entity discussed in any particular case was the entity that owned and maintained the streetlights, or was under contract to maintain and repair them. The same is

true in the case at bar; the record indicates that the City owned and maintained the streetlights at the intersection. Thus, we do not feel it is pertinent to distinguish the cases based on whether the action was brought against a city or a public utility or to discuss any issues involving contracts between entities and resulting liability or lack thereof.

 From our point of view, the New York case of *Thompson* states the rule, and the reasoning for the rule, best. A city has a duty to maintain its streets in a reasonably safe condition. *Thompson*, 578 N.Y.S.2d 507, 585 N.E.2d at 820. However, the duty to maintain existing streetlights is limited to situations in which illumination is necessary to avoid dangerous and potentially hazardous conditions. *Id.* An intersection that is large and busy does not qualify, in and of itself, as a dangerous or potentially hazardous condition, and the mere outage of streetlights at such an intersection does not render a reasonably safe street dangerous. *Id.* at 822.

This rule corresponds well to existing Missouri law. In *Boyd*, it was a bridge that, if not illuminated, would have created a dangerous condition. *Boyd*, 237 S.W. at 1008. In *Metz*, the duty to maintain illumination was based on the fact that the island or curb was a dangerous condition, shown by the frequency of collisions caused by vehicles running into the island, as well as the warning lights, lanterns, and reflectors placed there by the city. *Metz*, 81 S.W.2d at 469.

There is nothing in the record to show that the intersection of Chestnut Expressway and East Trafficway was illuminated originally to obviate a dangerous condition such as that in many of the cases analyzed, including those from Missouri. Further, there was no evidence that a duty was established for the City to provide illumination at that intersection by virtue of requirements of a design manual or that the City assumed the duty in some other fashion. *Oldaker*, 869 S.W.2d at 99.

No duty exists under the circumstances of this case; therefore, summary judgment in favor of the City was appropriate.

The judgment is affirmed.

RAHMEYER, C.J., and PARRISH, J., concur.